813 A.2d 813

### MOSAICA ACADEMY CHARTER SCHOOL, Lisa Mayo and Desiree McCall

v.

### COMMONWEALTH of Pennsylvania, DEPARTMENT OF EDUCATION; Eugene Hickok, In His Capacity As Secretary of Education of The Commonwealth of Pennsylvania; The School District of Philadelphia Board of Education and David Hornbeck, In His Capacity as Superintendent of The School District of Philadelphia

v.

### Bensalem Township School District, Ruth E. Bell, President, Board of School Directors

### Appeal of School District of Philadelphia Board of Education and David Hornbeck, In His Capacity As Superintendent of The School District of Philadelphia.

Supreme Court of Pennsylvania.

Submitted Nov. 20, 2001.

Decided Dec. 31, 2002.

192

Danielle Banks, Michael David O'Mara, Andre L. Dennis, Philadelphia, for appellants, School Dist. of Philadelphia Bd. of Educ. and David Hornbeck, in his capacity as Superintendent of School District of Philadelphia.

William R. Lloyd, Harrisburg, for appellant amicus curiae, PA State Educ. Ass'n.

Janetta Fink Call, for appellees, Mosaica Academy Charter School, Lisa Mayo and Desiree McCall.

Jason R. Wiley, New Britain, for appellees, Bensalem Tp. School Dist. and Ruth E. Bell.

Karen S. Feuchtenberger, Harrisburg, for appellee, Com. Dept. of Educ.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Chief Justice ZAPPALA.

This direct appeal involves a declaratory judgment action brought by Mosaica Academy Charter School to compel Philadelphia School District to pay its tuition subsidies due under the Charter School Law (CSL) [1] and to provide transportation to resident students attending the charter school. The Commonwealth Court granted summary judgment in favor of Mosaica Academy, directed Philadelphia School District to provide transportation to Philadelphia students attending Mosaica Academy and awarded Mosaica Academy attorneys' fees and costs. For the reasons that follow, we affirm in part and reverse in part.

The facts of this case are undisputed. On March 31, 1998, Bensalem Township School District received Mosaica Academy's charter school application. The application stated that Mosaica Academy intended to contract with its affiliate company, Mosaica Education, Inc., (MEI), to receive educational and administrative services. Bensalem Township School District reviewed the application and, on June 24, 1998, granted the

---

1. Act of March 10, 1949, P.L. 30, added by the Act of June 19, 1997, P.L. 225, *as amended*, 24 P.S. §§ 17–1701–A. to 17–1732–A.

charter. After Mosaica Academy determined that sixty percent of its student body resided in Philadelphia, it sought the statutorily mandated subsidies from Philadelphia School District pursuant to Section 17–1725–A. of the CSL. 24 P.S. § 17–1725–A.[2] It further requested that Philadelphia School District provide transportation to each of its resident students attending the charter school.[3] Philadelphia School District refused both requests.

On September 4, 1998, Mosaica Academy, along with Lisa Mayo and Desiree McCall (collectively Mosaica), filed a petition for review in Commonwealth Court against the Commonwealth of Pennsylvania, Department of Education, Eugene Hickok, in his capacity as Secretary of Education, the School District of Philadelphia Board of Education, and David Hornbeck, in his capacity as Superintendent of the School District of Philadelphia (collectively Philadelphia School District). The petition for review requested that the Commonwealth Court:

(1) Compel the Philadelphia School District to provide statutorily required transportation to and from school for the Philadelphia children who attend Mosaica; or, in the alternative;

(2) Order the Department of Education to pay Mosaica the transportation reimbursement subsidies intended to be paid to the Philadelphia School District for Mosaica students, as well as the cost of educating the enrolled Philadelphia School District children;

(3) Declare the scope of the responsibilities of the Commonwealth, Department of Education set forth in the Charter School Law as well as the scope of the responsibilities of the Philadelphia School District under the Charter School Law.[4]

**2.** Section 17–1725–A. of the CSL requires the district of residence of each student enrolled in a charter school to pay the charter school a statutorily formulated amount per student. 24 P.S. § 17–1725–A.

**3.** As discussed in detail *infra*, Section 17–1726–A. of the CSL requires the district of residence to provide transportation to its students attending a charter school outside the district in accordance with Section 1361 of the Public School Code. 24 P.S. § 17–1726–A.

**4.** Also on September 4, 1998, Mosaica filed an application for temporary and special injunction, seeking an immediate, temporary order

Philadelphia School District denied that Mosaica had a right to the relief requested. It asserted that the charter issued to Mosaica violates the CSL because Mosaica was impermissibly created as the alter ego of MEI and because Mosaica failed to obtain a regional charter when it intended to recruit most of its students from outside of Bensalem. Philadelphia School District also asserted that it had no duty to transport its resident students to Mosaica. Philadelphia School District further sought to join MEI and asserted a counterclaim against MEI and Mosaica, claiming unjust enrichment and seeking injunctive and declaratory relief. Philadelphia School District also moved to join as additional defendants Bensalem Township School District and Ruth Bell, in her capacity as President of the Board of School Directors (collectively BTSD), and filed a three-count joinder complaint against them.[5] Mosaica, MEI and BTSD filed preliminary objections.

On May 12, 1999, the Commonwealth Court overruled the preliminary objections of Mosaica and MEI without opinion. That same day, the Commonwealth Court issued an opinion and order sustaining in part and overruling in part BTSD's preliminary objections.[6]

compelling the Department of Education to divert to Mosaica transportation funds earmarked for Philadelphia School District. Alternatively, Mosaica sought an immediate, temporary order compelling Philadelphia School District to provide transportation to Mosaica's Philadelphia students. That same day, following argument via telephone conference, the Commonwealth Court granted Mosaica's application for special and temporary injunction and ordered Philadelphia School District to provide transportation to all Philadelphia children attending Mosaica, pending a hearing scheduled for September 9, 1998. Pursuant to a stipulated order dated September 9, 1998, Philadelphia School District agreed to transport the students until this legal action is resolved.

5. Therein, Philadelphia School District sought: (1) an injunction ordering BTSD to revoke or terminate Mosaica's charter and a declaratory judgment that the charter was improperly granted; (2) indemnification from BTSD for all amounts the Department of Education diverted from Philadelphia School District to Mosaica; and (3) a ruling that Philadelphia School District was denied due process in accordance with the Fourteenth Amendment to the United States Constitution and Article I, Section 1 of the Pennsylvania Constitution.

6. The court sustained BTSD's preliminary objection to Philadelphia School District's claim regarding the competitive bidding provisions of Section 7–751 of the Public School Code, 24 P.S. § 7–751. It also

The parties filed cross-motions for summary judgment. By order dated July 20, 2000, the Commonwealth Court granted the joint motion for summary judgment filed by Mosaica and MEI. It also granted summary judgment in favor of the Commonwealth, Department of Education, and BTSD.[7] It dismissed all claims Philadelphia School District had asserted against the various parties. The court held that, although the CSL provided an appeal for the *denial* of a charter school application, an appeal is not permitted where a charter application has been *granted*. It ruled that the exclusive remedy for the revocation or termination of a charter lies in Section 17–1729–A.(a) of the CSL. Thus, it concluded that Philadelphia School District's challenge to the grant of Mosaica's charter constituted an impermissible collateral attack on the discretion exercised by BTSD. The court further held that even assuming that Philadelphia School District was aggrieved by BTSD's grant of a charter to Mosaica, Philadelphia School District failed to exhaust its administrative remedies through the Charter School Appeal Board.

As to declaratory relief, the Commonwealth Court ordered Philadelphia School District to provide transportation to Philadelphia students who attend Mosaica and reimburse Mosaica for the cost of educating the enrolled Philadelphia residents. The Commonwealth Court ruled that if Philadelphia School District does not meet its statutory obligation under the CSL,

sustained the preliminary objection to Philadelphia School District's due process claim, finding that Philadelphia School District was not denied due process, as it had no vested property interest in the state funds that were diverted to Mosaica.

The court overruled BTSD's preliminary objection as to lack of standing. It overruled the preliminary objection in the nature of a demurrer as to Philadelphia School District's claim regarding the alleged "for-profit" status of Mosaica and its claim that Mosaica was a *de facto* regional school. It also overruled BTSD's preliminary objections based upon Pennsylvania Rules of Civil Procedure 2102(b), 2252, 2253 and 1028.

7. The Commonwealth Court dismissed without prejudice BTSD's motion for summary judgment seeking indemnification from Mosaica for any award that Philadelphia School District may receive for the amount of money expended to provide transportation to Philadelphia resident children attending Mosaica.

the Commonwealth of Pennsylvania, Department of Education, shall pay to Mosaica those reimbursement subsidies due pursuant to Section 17–1725–A.(a)(5) of the CSL.[8] Finally, it ordered Philadelphia School District to pay Mosaica costs and attorneys fees upon the submission of time records and costs to the court.

On December 18, 2000, the Commonwealth Court entered an order pursuant to the Declaratory Judgment Act, 42 Pa. C.S. §§ 7538 and 7541(b), granting Mosaica's request for attorneys' fees and costs in the amount of $265,221.52. The court noted that, although a finding of obdurate or vexatious conduct on the part of Philadelphia School District is not necessary here, it would have granted Mosaica attorneys fees and costs on that basis as well.

Philadelphia School District filed a direct appeal to this Court pursuant to Section 723 of the Judicial Code. *Id.* at § 723(a).[9] The first issue for review is whether Philadelphia School District's challenge to the validity of BTSD's charter is a proper defense in this declaratory judgment action. In resolving this issue, we must determine whether the Commonwealth Court erred by holding that there is no appeal from the grant of a charter and that the exclusive remedy for revocation or termination of the charter lies in the procedure set forth in the CSL.

■ Because these are issues of law, our review is plenary. *Phillips v. A–Best Products*, 542 Pa. 124, 665 A.2d 1167, 1170 (1995). In addressing these issues, we keep in mind that in construing statutory language, "[w]ords and phrases shall

8. This section provides that "if a school district fails to make a payment to a charter school as prescribed in this clause, the secretary shall deduct the amount, as documented by the charter school, from any and all State payments made to the district after receipt of documentation from the charter school." 24 P.S. § 17–1725–A.(a)(5). Thus, a portion of the funds earmarked for Philadelphia School District was diverted to Mosaica upon Philadelphia School District's refusal to submit tuition subsidies.

9. Section 723(a) of the Judicial Code gives this Court exclusive jurisdiction over appeals from final orders of·the Commonwealth Court entered in matters originally commenced in the Commonwealth Court. 42 Pa.C.S. § 723(a).

be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903. We further note that in reviewing whether an award of summary judgment is appropriate, appellate courts view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the non-moving party. *Pappas v. Asbel*, 555 Pa. 342, 724 A.2d 889 (1998). Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. *Id.*

Philadelphia School District argues that summary judgment was improperly entered against it because it has no obligation to pay Mosaica tuition subsidies, notwithstanding the fact that sixty percent of Mosaica's student body resides in Philadelphia. This claim is based upon Philadelphia School District's underlying challenge to the propriety of BTSD's grant of Mosaica's charter. Although we shall address Philadelphia School District's arguments in this regard, the resolution of this issue is clear. Section 17–1725–A. of the CSL mandates that charter school funding be derived in part from the per pupil subsidies paid by the enrolled student's school district of residence. 24 P.S. § 17–1725–A.(a)(2). Those payments are to be made monthly and flow directly to the charter school. *Id.* at § 17–1725–A.(a)(5). Philadelphia School District intentionally failed to comply with these clear statutory mandates and therefore summary judgment was properly entered in favor of Mosaica.

Philadelphia School District argues that the Commonwealth Court's decision effectively insulates the grant of a charter application from administrative and judicial review. It concedes that the CSL is silent as to any appeal procedure from the grant of a charter, but argues that such silence does not denote the lack of any right to appeal. It contends that the Legislature could not have intended to grant local school boards unfettered discretion in this regard. We disagree.

The General Assembly went to great lengths to permit the establishment of charter schools that operate independently from the existing school district structure in order to improve pupil learning and to encourage the use of innovative teaching methods. *Id.* at § 17–1702–A. The CSL is very specific as to the methods of establishing a charter school. *Id.* at § 17–1717–A. A prerequisite to the grant of a charter is the organization of the school as a nonprofit corporation governed by a board of trustees that possesses authority to decide matters relating to the operation of the school, subject to the school's charter. *Id.* at § 17–1716–A.(a).

Most significantly, the CSL vests the discretion to grant or deny an application for a charter in the hands of the local board of school directors of the district where the charter school will be located. *Id.* at § 17–1717–A.(c). It further grants accountability over the charter school to the chartering school district. *See id.* at § 17–1728–A.(a). The General Assembly has created and vested the CAB with the "*exclusive review* of an appeal by a charter school applicant, or by the board of trustees of an existing charter school, of a decision made by a local board of directors not to grant a charter." *Id.* at § 17–1717–A.(i)(1) (emphasis added).

The CSL is explicit as to the procedure a *charter applicant* must utilize to appeal the local board of directors' decision to *deny* a charter application. *Id.* at § 17–1717–A.(i)(2)(5). It also delineates the procedure to be utilized by the CAB on appeal from such decisions, *id.* at §§ 17–1717–A.(6)–(8), and directs that all decisions of the CAB be subject to appellate review by the Commonwealth Court. *Id.* at § 17–1717–A.(i)(10). The CSL simply does not provide for an appeal from a local board of directors' decision to *grant* a charter. Upon examination of the CSL in its entirety, we agree with the Commonwealth Court that the Legislature's omission in this regard was deliberate. We decline to recognize an appeal procedure when the Legislature did not see fit to create one.[10] Moreover, as noted by the Commonwealth

10. Whether mandamus or similar relief would be available in the appropriate case is not before us. We acknowledge that school board

Court, the legislature's decision to permit an appeal only from the denial of a charter application is not offensive to individual rights because all private citizens had a right to attend and participate in BTSD's July 7, 1998 open public forum, at which BTSD considered Mosaica's charter application and of which the Philadelphia School District had notice.

As we have concluded that there can be no direct attack on a local board of directors' grant of a charter, Philadelphia School District's attempt to *collaterally* attack or revoke BTSD's grant of Mosaica's charter in the instant declaratory judgment action must likewise fail. Accordingly, we hold that Philadelphia School District's challenge to BTSD's grant of Mosaica's charter does not constitute a defense to Mosaica's claim for tuition subsidies.[11]

policy decisions are entitled to substantial deference; indeed, it has been emphasized that courts will not interfere with such decisions unless it is apparent that conduct of the board is arbitrary, capricious, and prejudicial to the public interest. See, e.g. *Farris v. Swetts*, 158 Pa.Super. 645, 46 A.2d 504, 505 (1946). Nevertheless, it does not appear that the Legislature has specifically precluded a litigant from invoking a court's equitable jurisdiction, based upon an appropriately crafted challenge, in a situation in which there is a legitimate question concerning whether a board's decision making in granting a charter has exceeded the wide boundaries accorded.

11. Moreover, we note that this Court recently examined the substance of Philadelphia School District's underlying claims in *West Chester Area School District v. Collegium Charter School*, Nos. 89 and 90 MAP 2001 (J-169-2001), 812 A.2d 1172 (Pa.2002). This Court rejected the claim that a charter school had to seek a regional charter if it intended to recruit students outside of its district. We held that "the CSL unquestionably directs the applicant to file a charter school application in the district where the facility is to be located and grants accountability over the charter school only to the chartering school district." *Id.* at 1183. We recognized that this statutory procedure may result in a non-chartering school district incurring financial obligations to the charter school when it has no control over the decisions being made on behalf of the charter school. We noted, however, that the school district's concerns over the wisdom of such a procedure should be directed to the General Assembly. *Id.* This Court further rejected the claim that the charter school's proposed contractual agreement with for-profit corporation Mosaica Education, Inc., did not violate the CSL because the CSL expressly permits the charter school to make contracts and leases for the procurement of services. 24 P.S. § 17-1714-A.(a)(5). Thus, even assuming Philadelphia School District could appeal BTSD's grant of Mosaica's charter, its substantive grounds are meritless.

Contrary to Philadelphia School District's contentions, however, this conclusion does not render inviolate a local school board's grant of a charter. The General Assembly provided an exclusive remedy for the revocation or termination of a charter in Section 17–1729–A., entitled "Causes for nonrenewal or termination." This section gives the local board of school directors of the chartering district the ability to revoke or fail to renew a charter based upon several enumerated grounds, including violations of the charter, violations of the CSL, or violations of any provision of law of which the charter school has not been exempted. 24 P.S. §§ 17–1729–A.(a)(1), (4), (5). Subsection (c) of Section 17–1729–A. mandates that the local board of school directors give the charter school notice of revocation or nonrenewal of a charter, conduct a public hearing on the matter, and ultimately take formal action. *Id.* at § 17–1729–A.(c). It further states that "[e]xcept as provided in subsection (d) (relating to charter school's appeal of decision to revoke or not renew a charter), the decision of the local board shall not be subject to 2 Pa.C.S. Ch. 7 Subch. B (relating to judicial review of local agency action)." *Id.* Finally, subsection (d) expressly states that "[t]he [CAB] shall have the *exclusive review* of a decision not to renew or revoke a charter." *Id.* at § 17–1729–A.(d) (emphasis added). Thus, the absence of a right to appeal the grant of a charter does not insulate the charter school from revocation of the charter on the grounds that the charter is in violation of the CSL. Instead, the CSL sets forth a detailed procedure for the chartering school district, and ultimately the CAB, to employ in those circumstances.

We further note that the Declaratory Judgments Act, 42 Pa.C.S. §§ 7532–7541, expressly prohibits Philadelphia School District's challenge to the validity of the charter. Section 7541(c) precludes granting of relief with respect to any proceeding within the exclusive jurisdiction of a tribunal other than a court. *Id.* at § 7541(c)(2). Section 7541 contains no qualification regarding the ability of the litigant to pursue alternative avenues of relief.[12] We have concluded that the

12. Philadelphia School District dedicates a substantial portion of its brief to dispute the Commonwealth Court's alternative holding that it

CSL sets forth the procedure for the revocation of a charter by the local board of directors of the chartering district, with review of that decision falling within the exclusive authority of the CAB. Thus, Philadelphia School District may not bypass that procedure and obtain a declaration from the Commonwealth Court that the charter was improperly granted. Further, it may not, in this declaratory judgment action, seek to compel BTSD to perform the discretionary act of revoking the charter.

The second issue for review is whether the CSL requires a school district to provide transportation to resident students attending a charter school located outside of its district. Prior to amendments in 1999 and 2000,[13] which are not relevant here, Section 17–1726–A. provided as follows:

> Students who reside in the school district in which the charter school is located or who are residents of a school district which is part of a regional charter school shall be provided transportation to the charter school on the same

failed to exhaust administrative remedies that it believes are legally inadequate. Regardless of the potential merit in these allegations, Philadelphia School District misses the point. Its purported lack of a remedy under the CSL does not render valid its current defenses and counter claims asserted in this action under the Declaratory Judgments Act.

13. The provision now reads as follows:

> Students who reside in the school district in which the charter school is located or who are residents of a school district which is part of a regional charter school shall be provided transportation to the charter school on the same terms and conditions as transportation is provided to students attending the schools of the district. School districts of the first class shall also provide transportation to the students if they are the same age or are enrolled in the same grade, grades or their grade equivalents as any students of the district for whom transportation is provided under any program or policy to the schools of the district. Such transportation shall be provided to charter school students each school day whether or not transportation is provided during the same school day to students' attending school of the district. Nonresident students shall be provided transportation under section 1361. Districts providing transportation to a charter school outside the district shall be eligible for payments under section 2509.3 for each public school student transported.

24 P.S. § 17–1726–A.(a). It is clear that the amendments to this provision did not alter the fact that nonresident students shall be provided transportation under Section 1361.

terms and conditions as transportation is provided to students attending the schools of the district. *Nonresident students shall be provided transportation under section 1361.* Districts providing transportation to a charter school outside the district shall be eligible for payments under section 2509.3 for each public school student transported. 24 P.S. § 17–1726–A (emphasis added).

This provision directs that students attending charter schools located within their district shall receive the same transportation privileges that are provided to students attending schools of the district. It separately addresses the transportation to be afforded to those attending a charter school outside their resident district, as is the case here, and states that transportation shall be provided under Section 1361.[14] Although the parties do not dispute that Section 1361 governs, they disagree as to the application of our case law interpreting Section 1361, specifically *Babcock School District v. Potocki,* 502 Pa. 349, 466 A.2d 616 (1983).

In *Babcock,* a student and his parents commenced an action in mandamus to compel his school district to provide him transportation to a public school located outside the district. We recognized that Section 1361 was designed to ensure the adequate transportation of resident pupils attending non-public school under circumstances where a district has determined to transport public school children. We concluded, however,

14. Section 1361 provides, in relevant part:

The board of school directors in any school district may, out of the funds of the district, provide for the free transportation of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled, provided that such school is not operated for profit and is located within the district boundaries or outside the district boundaries at a distance not exceeding ten miles by the nearest public highway.... When provision is made by a board of school directors for the transportation of public school pupils to and from such schools ... the board of school directors shall also make identical provision for the free transportation of pupils who regularly attend nonpublic kindergarten, elementary or high schools.... The board of school directors shall provide such transportation whenever so required by any of the provisions of this act or of any other act of Assembly.

24 P.S. § 13–1361.

that the plain language of Section 1361 provides only that the board of school directors "may" provide for free transportation and not that it "must" do so. We therefore held that Section 1361 does not mandate that pupils be transported to public schools outside the school district.

The Commonwealth Court in the instant case held that charter schools are not "public" schools as defined by the Public School Code or the CSL and therefore our decision in *Babcock* is not controlling. Contrary to this holding, the parties appear to concede that a charter school is in fact a "public" school by definition.[15]

Philadelphia School District argues that, according to *Babcock*, it has the statutory *discretion* to provide transportation to its resident students attending Mosaica, but is not required to do so. Mosaica and the Department of Education contend that although *Babcock* is generally the controlling law on the issue of out-of-district transportation of students to public schools, when the Legislature enacted Section 17–1726–A. of the CSL, it carved out an exception to the *Babcock* holding. Mosaica and the Department of Education rely on the portion of Section 1361 that states: "When provision is made by a board of school directors for the transportation of public school pupils to and from such schools ... the board of school directors shall also make identical provision for the free transportation of pupils who regularly attend nonpublic kindergarten, elementary or high schools...." They submit that the reference in the CSL to Section 1361 demonstrates that the Legislature's clear intent was to require that students be transported to out-of-district charter schools that are located within ten miles of the district's boundary, just as transportation is to be provided to nonpublic school students. They further assert that *Babcock* was decided fourteen years before charter schools were developed in this Commonwealth and

15. Section 17–1703–A. defines charter school as an independent public school established and operated under a charter from the local board of school directors and in which students are enrolled or attend. 24 P.S. § 17–1703–A.

therefore it cannot now control the distinct issue of transportation of nonresident students to charter schools.

■ Although Philadelphia School District's approach has superficial appeal, we find the arguments presented by Mosaica and the Department of Education more consistent with the legislative intent behind the charter school system. There is a degree of ambiguity in the Legislature's cross-reference to Section 1361 in Section 17–1726–A. of the CSL. While it is true that the precise language in Section 1361 relied upon by Mosaica and the Department of Education applies to nonpublic schools, it cannot be ignored that the sole statutory provision the Legislature referred to in addressing the transportation of charter school students outside their district, *i.e.,* Section 1361, was designed to provide adequate transportation to resident pupils attending *nonpublic* schools. *Babcock,* 466 A.2d at 617. The CSL also states that funding for the transportation of students to charter schools is provided pursuant to Section 2509.3, which deals exclusively with private schools. Thus, although the General Assembly was clear in defining a charter school as a public school, it went to great lengths to treat the charter schools akin to private schools *for purposes of transportation.* Finally, as noted, the CSL defines charter school as an *"independent* public school," 24 P.S. § 17–1703–A., distinguishing it from traditional public schools, which were at issue in *Babcock.* Thus, we conclude that the General Assembly elected to require transportation to resident students attending a charter school located outside of its district by incorporating Section 1361 to define the level of transportation to be provided to non-resident students. There is no other logical purpose for the Legislature's reference to Section 1361 and the disparate treatment between students attending a charter school inside their district as opposed to a charter school outside their district.

■ The third issue for review is whether the Commonwealth Court erred in awarding Mosaica attorneys' fees and costs as "ancillary relief" under Sections 7538 and 7541(b) of the Declaratory Judgments Act. The American Rule states that a litigant cannot recover counsel fees from an adverse

party unless there is express statutory authorization, a clear agreement of the parties or some other established exception. *Lavelle v. Koch,* 532 Pa. 631, 617 A.2d 319, 323 (1992). In Pennsylvania, the American Rule is embodied in 42 Pa.C.S. § 1726(a)(1), which provides that attorneys' fees are not an item of taxable costs except as permitted by 42 Pa.C.S. § 2503 (relating to right of participants to receive counsel fees), which is not at issue here.[16] Thus, we must determine whether there is express statutory authorization or some other established exception for the imposition of attorneys' fees found in the aforementioned provisions of the Declaratory Judgments Act.

We begin our analysis with an examination of Section 7538, entitled Applications for relief, which states,

(a) General Rule.—Judicial relief based on a declaratory judgment or decree may be granted whenever necessary or proper, subject to Chapter 55 (relating to limitation of time). If an application for supplemental relief is deemed sufficient the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by a previously entered declaratory judgment or decree to show cause why further relief should not be granted.

(b) Form of application.—An application for relief or supplemental relief under this subchapter shall be in the form prescribed by general rules.

42 Pa.C.S. § 7538 (emphasis added).

Finding that subsection (a) provided for relief where the rights of a party have been adjudicated by a "previously entered declaratory judgment," the Commonwealth Court noted that it had granted Mosaica declaratory relief and ordered Philadelphia School District to provide transportation to Phila-

---

**16.** The Commonwealth Court stated several times in its opinion that it "could have" found the imposition of attorneys' fees appropriate pursuant to 42 Pa.C.S. § 2503(7), which permits the imposition of counsel fees "as a sanction for dilatory, obdurate or vexatious conduct during the pendency of a matter." We find, however, that it did not base its award on Section 2503(7), as it stated: "The School District of Philadelphia was ably represented in this litigation, and the award of attorneys fees is granted *solely* pursuant to the Declaratory Judgments Act." Slip op. dated December 18, 2000 at 6 (emphasis added). Thus, we do not examine the propriety of the award under Section 2503(7).

delphia students attending Mosaica. The court relied on the language of Section 7538, which states: "further relief, based on a declaratory judgment or decree, may be granted when necessary or proper." *Id.* at § 7538(a). Finding that Philadelphia School District's arguments in this cases were "nothing more than an attempt to block the implementation of the Charter School Law, which was legislation that had been duly passed by the General Assembly of this Commonwealth, and signed by the Governor of this Commonwealth," Slip op. dated December 18, 2000 at 3, it concluded that the award of counsel fees was warranted here as "ancillary relief." [17]

Philadelphia School District argues that there is no case in this Commonwealth granting attorneys' fees as "ancillary relief" under the Declaratory Judgments Act. It concedes that "supplemental relief" may be granted, but submits that such term does not encompass attorneys' fees, but rather refers to any further relief that may be necessary to carry out and enforce the court's decree. It maintains that there is no case in this Commonwealth holding that "supplemental relief" under the Declaratory Judgments Act includes a right to recover attorneys' fees.

Our research has revealed that counsel fees have been awarded as supplemental relief pursuant to the Declaratory

17. Although the Commonwealth Court cited Section 7541(b) in support of its award of counsel fees, it did not recite the statutory language or provide any analysis as to why this section is relevant or controlling. Section 7541(b) states in its entirety:

(b) Effect of alternative remedy.—The General Assembly finds and determines that the principle rendering declaratory relief unavailable in circumstances where an action at law or in equity or a special statutory remedy is available has unreasonably limited the availability of declaratory relief and such principle is hereby abolished. The availability of declaratory relief shall not be limited by the provisions of 1 Pa.C.S. § 1504 (relating to statutory remedy preferred over common law) and the remedy provided by this subchapter shall be additional and cumulative to all other available remedies except as provided in subsection (c). Where another remedy is available the election of the declaratory judgment remedy rather than another available remedy shall not affect the substantive rights of the parties, and the court may pursuant to general rules change venue, require additional pleadings, fix the order of discovery and proof, and take such other action as may be required in the interest of justice. 42 Pa.C.S. § 7541(b).

Judgments Act under limited circumstances. In *Kelmo Enterprises Inc. v. Commercial Union Insurance Company*, 285 Pa.Super. 13, 426 A.2d 680 (1981), the insureds filed a petition for declaratory judgment, seeking an adjudication of their rights under their insurance policy as well as attorneys' fees and costs incurred in the declaratory judgment action.[18]

On appeal from the lower court's grant of attorneys' fees, the insurance company argued that the Declaratory Judgment Act contained no specific authorization for an award of counsel fees. The Superior Court held that while that was true, the Act has been "declared to be remedial ... and is to be liberally construed and administered." 42 Pa.C.S. § 7541(a). The court further noted that the Act provides for "supplemental relief" in Section 7538 and permits the court to "take such other action as may be required in the interest of justice," pursuant to Section 7541(b), the same provisions relied upon by the Commonwealth Court in the instant case. The *Kelmo* court concluded, "the mere fact that this is a declaratory judgment action will not preclude an award of attorneys' fees and costs." *Kelmo*, 426 A.2d at 684.

The *Kelmo* court recognized the general rule against the imposition of counsel fees, but held that it would be anomalous to grant an insured attorneys' fees expended in defense of the underlying tort action, but to deny the fees in an action brought to vindicate the contractual duty to defend. Accordingly, it held that "an insured who is compelled to bring a declaratory judgment action to establish his insurer's duty to defend an action brought by a third party may recover his attorneys' fees incurred in the declaratory judgment action if the insurer has, in bad faith, refused to defend the action brought by the third party." *Id.* at 685.

Thus, the court in *Kelmo* utilized Sections 7538 and 7541(b) to award counsel fees as supplemental relief under the

18. The insureds additionally sought an award of counsel fees for the private defense they had obtained in the *underlying* action in which the insurer failed to defend. The court granted such relief, holding that in an action in assumpsit for the breach of a covenant to defend, recovery includes the costs of hiring counsel and other costs of defense. *Kelmo*, 426 A.2d at 683 n. 4.

Declaratory Judgments Act to effectuate the declaratory judgment previously entered by the court. Although we do not find that such ruling is erroneous, we hold that it is not applicable here. The Commonwealth Court did not award Mosaica attorneys' fees to enforce its previously entered declaratory judgment. Rather, the Commonwealth Court simply looked with disfavor upon Philadelphia School District's tactics in challenging BTSD's grant of Mosaica's charter and concluded that attorneys' fees and costs were warranted as "ancillary relief." Unlike *Kelmo*, the declaratory judgment arose from the various parties' claims against each other seeking declarations as to their obligations under a recent piece of groundbreaking legislation. As the Declaratory Judgments Act does not expressly authorize the award of counsel fees and because the award of counsel fees was not implemented as supplemental relief to effectuate the declaratory judgment pursuant to Section 7538, the grant of attorneys' fees was improper.[19]

In summary, we affirm those portions of the Commonwealth Court's orders that entered summary judgment in favor of Mosaica, MEI, BTSD, and the Commonwealth, Department of Education, and dismissed all the claims against them, on the ground that Philadelphia School District cannot collaterally attack the charter BTSD granted to Mosaica. We also affirm that portion of the Commonwealth Court's orders that declared that Philadelphia School District must provide transportation to its resident students attending Mosaica, which is located outside the district. Finally, we reverse the order of the Commonwealth Court that granted attorneys' fees and costs to Mosaica.

Justice NEWMAN files a concurring opinion.

Justice NIGRO files a dissenting opinion.

**19.** As we have determined that the Commonwealth Court erred in awarding counsel fees against Philadelphia School District under the Declaratory Judgments Act, we need not examine the final issue in this appeal as to whether the Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, *et seq.*, precludes the assessment of attorneys' fees and expenses against a school district.

Justice NEWMAN, concurring.

I join the Majority in concluding that the Philadelphia School District: (1) may not collaterally attack the grant of a Charter School application; (2) is obligated to fund the transportation of its resident students attending Mosaica Academy Charter School; and (3) is not required to pay counsel fees and costs. However, I write separately to reflect my view that there is a more direct and straightforward statutory mandate for the Philadelphia School District to provide transportation for its resident students to the Mosaica Academy Charter School contained in Section 1361 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 13–1361, and Section 17–1726–A of the CSL, 24 P.S. § 17–1726–A.

The Majority reasons that, while by definition a charter school is a public school, the General Assembly intended that it be treated as a private school for the purposes of transporting non-resident students. It holds that, because the CSL indicates that transportation for non-resident students must be provided by Section 1361 [relating to transportation to other than regular public schools], the General Assembly intended that charter schools be treated like private schools for transportation purposes and, if the district transports its students to public schools, as the Philadelphia School District does, then it must transport students to other than public schools, including charter schools.

Section 1726–A of the Charter School Law clearly delineates between transportation for students residing in the district in which the charter school they attend is located, and transportation for students residing in a district other than the district in which the charter school they attend is located. Section 1726–A of the CSL provides as follows:

Students who reside in the school district in which the charter school is located or who are residents of a school district which is part of a regional charter school shall be provided transportation to the charter school on the same terms and conditions as transportation is provided to stu-

dents attending the schools of the district. **Nonresident students shall be provided transportation under section 1361.** Districts providing transportation to a charter school outside the district shall be eligible for payments under section 2509.3 for each public school student transported. 24 P.S. § 17–1726–A (emphasis added). It is uncontroverted that students residing in the district in which the charter school is located are to be transported to their charter schools in like manner to the students attending public schools within the district. There is also agreement that, for students attending charter schools outside the district in which they reside, transportation must be provided pursuant to Section 1361. It is the intent of the General Assembly in referencing Section 1361 for non-resident transportation that forms the basis for the controversy before us. Section 1361 provides, in relevant part:

The board of school directors in any school district **may,** out of the funds of the district, provide for the free transportation of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled, provided that such school is not operated for profit and is located within the district boundaries or outside the district boundaries at a distance not exceeding ten miles by the nearest public highway.... When provision is made by a board of school directors for the transportation of public school pupils to and from such schools ... the board of school directors shall also make identical provision for the free transportation of pupils who regularly attend nonpublic kindergarten, elementary or high schools.... **The board of school directors shall provide such transportation whenever so required by any of the provisions of this act or of any other act of Assembly.**

24 P.S. § 13–1361 (emphasis added). Pursuant to Section 1361, a school board may exercise its discretion in determining whether or not to transport students within its district. In point of fact, the school board may decide not to provide transportation to any pupil in its district. *Roberts v. School District of City of Scranton,* 462 Pa. 464, 341 A.2d 475 (1975).

However, the portion of the statute that is germane to our analysis mandates that the school board provide transportation to kindergarten, elementary school, or secondary school students "whenever so required by any of the provisions of this act or any other act of Assembly." The plain meaning of this provision is that, when directed by either the Public School Code of 1949, of which the CSL is a provision, or by an act of Assembly, such as the CSL, the board of school directors no longer has the discretion to decide whether or not it will provide transportation; it must provide transportation for non-resident students to their charter schools located within ten miles of the district boundaries.

Accordingly, I believe that there is a clear mandate to the Philadelphia School District contained within Section 1726 A of the CSL and Section 1361 of the Public School Code to provide transportation services to its resident students attending charter schools located outside the district.

Justice NIGRO, dissenting.

In *West Chester Area School District v. Collegium Charter School*, 812 A.2d 1172, 2002 WL 31852855 (Pa. 2002), I outlined my position that the Charter School Law ("CSL"), 24 P.S. §§ 17–1701–A. to 17–1732–A., requires a charter school applicant to seek a regional charter whenever the "applicant plans at the outset to actively recruit students from select school districts other than that in which the school is physically located." 812 A.2d 1172, 1190 (Nigro, J., dissenting). Here, Mosaica Academy Charter School ("Mosaica") sought a local charter from Bensalem Township School District ("BTSD"), where its school would be physically located, but specifically planned for the vast majority of the students to come from neighboring districts. In my view, Mosaica was therefore obligated to apply for and obtain a regional charter as a prerequisite to requiring the neighboring school districts to finance Mosaica's charter school with their residents' tax dollars.

Significantly, in the charter school application that Mosaica submitted to BTSD, it projected that just 80 of its 400

students would reside in Bensalem Township, with the remaining 320 students residing outside the district. *See* Operating Budget, attached as Exhibit C to Revised 1997 Charter School Application ("Application"). Mosaica therefore expected a full *eighty percent* of its student body to come from other school districts, and in its application specifically identified Northeast Philadelphia and Lower Bucks County, both of which border BTSD, as regions in which it would conduct enrollment meetings. Application at 37. In spite of having targeted those areas, when Mosaica was asked on the application form about the efforts it had made "to notify those districts from which [it] would draw students," it responded only that it had "met with the school board and the administration of *BTSD* on several occasions." *Id.* at 25 (emphasis added). As such, it acknowledged that it had made no effort to notify the other school districts, much less discuss with those districts whether making a charter school available to their resident children would promote the legislative purposes underlying the CSL. *See* 24 P.S. § 17–1702–A. (describing the CSL's purpose as, among other things, to improve pupil learning); 24 P.S. § 17–1717–A.(e)(2)(iii) (requiring school boards to evaluate whether a charter application conforms to the legislative intent set forth in section 17–1702–A.).

Nevertheless, after BTSD granted Mosaica's application for a local charter on June 24, 1998, Mosaica immediately began accepting hundreds of applications for enrollment from students in the Philadelphia School District. Almost exactly as predicted, by July 14, Mosaica had accepted 449 students—256 from the Philadelphia School District, and the remainder from Bensalem, Neshaminy and Bristol Townships.[1] Based on the number of students from Philadelphia, Mosaica sent a bill to the Philadelphia School District on July 17, 1998, demanding monthly payments of $117,082.24, *i.e.,* $457.35 per month for each of the 256 students. It further indicated in an accompanying letter that it expected the Philadelphia School District to reallocate its transportation resources to provide transportation to Mosaica students living within its borders. *See*

1. It is not clear from the record how many students resided in BTSD.

Letter from Gene Eidelman, Acting Head of Mosaica to David Hornbeck, Superintendent of the Philadelphia School District, dated July 17, 1998.

According to the majority, the Philadelphia School District cannot defend itself against this claim for over $1.4 million in annual tuition subsidies and transportation services because the CSL does not specifically provide for an appeal from a local board of school directors' decision to grant a charter.[2] However, when the regional charter provisions are applied as I believe they were intended, it is readily apparent that the General Assembly did not provide for appeals from charter grants because to do so would have been gratuitous given the democratic regional charter approval process. Under the statute as I interpret it, if a charter school intends to serve a region, it must obtain the approval of *all* of the school districts within that region from which it intends to actively recruit students. *See* 24 P.S. § 17–1718–A.(b) ("[A]ny action to ... sign a written charter of an applicant shall require an affirmative vote of a majority of all the directors of each of the school districts involved."). As such, approval of the charter signals unqualified support for the charter from all of the targeted districts. *See id.* Thus, the regional charter approval process simply negates the need to provide such districts with an appellate remedy.

Here, of course, Mosaica did not utilize the regional charter school application procedures and thus did not give the Philadelphia School District the opportunity to vote on its charter application. Nevertheless, Mosaica drew approximately 60% of its students from Philadelphia and sought to divert to its independent venture over $1.4 million in Philadelphia taxpayers' money that was presumably already budgeted for the

**2.** The majority also contends that "the legislature's decision to permit an appeal only from the denial of a charter application is not offensive to individual rights because all private citizens had a right to attend and participate in BTSD's July 7, 1998 open public forum." Op. at 818–19. However, this public forum took place almost two weeks *after* BTSD granted the charter. Accordingly, to the extent that individual rights had been violated by the unilateral grant of the charter, I do not see how this forum could have ameliorated those violations.

Philadelphia public school system. The fundamental unfairness of this process is self-evident and, in my view, is not what the General Assembly intended. Accordingly, I would hold the charter invalid, at least insofar as it purports to impose obligations on the Philadelphia School District, and would thereby relieve the Philadelphia School District of any obligation to pay tuition subsidies to Mosaica or provide transportation to Mosaica students.