The **SCHOOL DISTRICT OF PHILADELPHIA,**
Petitioner

v.

**DEPARTMENT OF EDUCATION,**
Respondent.

**Walter D. Palmer Leadership Learning Partners Charter School,**
Petitioner

v.

**Department of Education, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 15, 2012.
Decided April 3, 2012.
As Amended June 6, 2012.

Michael I. Levin, Huntingdon Valley, for designated petitioner.

Karen S. Feuchtenberger, Harrisburg, for respondent.

Joseph T. Doyle, Media, for intervenor Walter D. Palmer Leadership Learning Partners Charter School.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge COVEY.

The School District of Philadelphia (District) and Walter D. Palmer Leadership Learning Partners Charter School (Charter School) appeal the March 4, 2011 order of the Secretary of Education (Secretary), wherein, he determined that the enrollment cap was assented to by the Charter School for school year 2007–2008, but that the enrollment cap incorporated into the 2005 charter agreement was not valid as to school years 2008–2009, and 2009–2010; and directed the Department of Education (Department) to disburse $1,253,225.82 of the $1,678,579.18 that was withheld from the District's Basic Education Subsidy for school years 2008–2009 and 2009–2010. Essentially, the issues before this Court are: (1) whether the Department has jurisdiction to decide a funding dispute; (2) whether the Secretary properly concluded that the enrollment cap was valid for the 2007–2008 school year; and (3) whether the Secretary properly concluded that the enrollment cap was invalid for school years 2008–2009 and 2009–2010. We affirm.

On November 12, 1999, the Charter School submitted an Application for Grant of a Charter (Application). In July 2000, the State Charter School Appeal Board granted the Charter School's appeal [1] and directed the District to grant the Application and sign the charter pursuant to Section 1720–A of the Charter School Law (CSL).[2] Because the Charter School's initial charter expired in 2005, it requested the District to renew it. On March 16, 2005, the School Reform Commission (SRC)[3] adopted a resolution granting the Charter School's charter renewal request beginning September 1, 2005 and ending August 31, 2010. The resolution also contained a provision limiting the Charter School's enrollment to 675 students from grades kindergarten through eight (K–8). The 2005 charter referenced and incorporated the SRC resolution capping the student enrollment. The Charter School and the District signed the 2005 charter.

In May 2008, the Charter School requested an amendment to its charter to increase student enrollment by 40 students, and accommodate the addition of a kindergarten program for four-year-old students. The SRC took no action on this

---

**1.** The Charter School filed an appeal with the Department because the District failed to act on its Application within 75 days of the initial public hearing.

**2.** Act of March 10, 1949, P.L. 30, *as amended*, added by Section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. § 17–1720–A.

**3.** The SRC is the governing body of the District as of December 21, 2001.

request. On August 19, 2009, the SRC adopted a resolution approving a change in the Charter School's name and authorizing the Charter School to serve grades K–11 for the 2009–2010 school year. However, the cap remained in place.

For the 2007–2008 school year, the Charter School served grades K–9, and its average daily enrollment was 730.181 according to the Charter School's records, and 727.98 according to the District's records. The District provided funding for 675 students; 613.43 regular students, and 61.57 special education students. For the 2008–2009 school year, the Charter School served grades K–10, and its average daily enrollment was 733.827 according to the Charter School's records, and 731.89 according to the District's records. The District provided funding for 675 students; 608.29 regular students, and 66.71 special education students. For the 2009–2010 school year, the Charter School served grades K–11, and its average daily enrollment was 770 according to the Charter School's records, and 760.93 according to the District's records. The District provided funding for 675 students; 589.33 regular students, and 85.67 special education students.

On July 13, 2010, the Charter School requested by letter that the Department withhold from the District's subsidy allocation the amount of $1,678,579.18 for students it educated during school years 2007–2008, 2008–2009, and 2009–2010 above the enrollment cap contained in its charter. On September 10, 2010, the Department notified the District by letter that, pursuant to Section 1725–A(a)(5) of the CSL,[4] it withheld $1,678,579.18 from the District's next Basic Education Subsi-

dy, as requested by the Charter School. The Department also notified the District that it could challenge the withholding if it disagreed with the deduction.

On September 13, 2010, the District by letter objected to the withholding and requested a hearing regarding the accuracy of the deduction. On December 2, 2010, the Department's hearing officer held an administrative hearing. On March 4, 2011, the Secretary filed an Opinion and an Order. The Order decreed that: (1) the Charter School assented to the cap on student enrollment for school years 2005–2006, 2006–2007, and 2007–2008, when it signed the charter agreement; (2) the Charter School is not entitled to payment for the education of students it enrolled above the cap for the 2007–2008 school year; (3) the cap is not valid for the school years 2008–2009 and 2009–2010; (4) the Charter School is entitled to payment for the education of students it enrolled above the cap for school years 2008–2009 and 2009–2010; (5) the Charter School is entitled to $475,785.72 from the District for the education of 58.827 students for whom it has not received payment for during the 2008–2009 school year; and, (6) the charter school is entitled to $777,440.10 from the District for the 95 students for whom it has not received payment for during the 2009–2010 school year. Accordingly, the Order directed the Department to disburse to the Charter School, $1,253,225.82 of the $1,678,579.18 that was withheld from the District's Basic Education Subsidy for the school years 2008–2009 and 2009–2010, and to remit the balance of the withheld funds to the District in the amount of $425,353.36. The District and the Charter School appealed to this Court.[5]

4. Added by Section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. § 17–1725–A(a)(5).

5. "This Court's standard of review of a decision of the Secretary of Education is limited to [the] determination of whether substantial evidence supports necessary factual findings,

■ The District first argues that the Department did not have jurisdiction to decide an issue that involves an alleged violation of a charter agreement. Specifically, the District contends that the only procedure available to a charter school to contest the validity of an enrollment cap is to file a timely appeal to the appropriate Court of Common Pleas pursuant to the Local Agency Law.[6] The District further contends that the Department has no authority to withhold a subsidy or to pay a withheld subsidy to a charter school for students who are attending the school in violation of any of the charter's terms, in this case, the authorized grades and the enrollment cap. We disagree.

■ The appeal herein is from the Department's funding decision. Therefore, it is controlled by the CSL. The Charter School properly requested funding from the Department. The Department granted the request and notified the District giving the District the opportunity to challenge the disbursement, which it did. Accordingly, the Department held a hearing pursuant to the CSL from which the District appealed. As this Court has said, "[i]t has long been established that '[w]here a remedy is provided by an act of assembly, the directions of the legislation must be strictly pursued and such remedy is exclusive.'" *Phillips v. State Tax Equalization Bd.*, 948 A.2d 889, 893 (Pa. Cmwlth.2008) (quoting *Lurie v. Republican Alliance*, 412 Pa. 61, 63, 192 A.2d 367, 369 (1963)).

Section 1725–A of the CSL, entitled "[f]unding for charter schools[,]" provides in paragraph (a)(6):

Within thirty (30) days after the secretary makes the deduction described in clause (5), a school district may notify the secretary that the deduction made from State payments to the district under this subsection is inaccurate. *The secretary shall provide the school district with an opportunity to be heard* concerning whether the charter school documented that its students were enrolled in the charter school, the period of time during which each student was enrolled, the school district of residence of each student and whether the amounts deducted from the school district were accurate.

*Id.* (emphasis added). Moreover, this Court specifically held that "the Section 1725–A(a)(6) hearing is intended to cover the accuracy of the Secretary's deduction of a subsidy, *for any reason,* where the school district fails to make the prescribed monthly payment to a charter school in the correct amount." *Chester Cmty. Charter Sch. v. Dep't of Educ.*, 996 A.2d 68, 78 (Pa.Cmwlth.2010) (emphasis added). Here, pursuant to Section 1725–A(a)(5) of the CSL, the Department notified the District of its withholding of funds, and pursuant to Section 1725–A(a)(6) of the CSL, the District requested a hearing. Accordingly, the Department had jurisdiction to hear this matter.

■ Next, the District argues that the Secretary properly concluded that the enrollment cap was valid for the 2007–2008 school year. The Charter School, however, argues that based on Act 61, he did not. We agree with the District.

■ At the time of the Charter School's renewal in 2005, only Section 1720–A of the CSL was in existence. Section 1720–A(a) of the CSL provides that the signing

---

and whether an error of law or constitutional violation was committed." *Curl v. Solanco School Dist.*, 936 A.2d 183, 185 n. 1 (Pa. Cmwlth.2007).

6. 2 Pa.C.S. §§ 551–555, 751–754.

of a charter is nothing more than a "legal authorization for the establishment of a charter school." 24 P.S. § 17–1720–A(a). Thus, in the case before us, any conditions included in the charter were imposed upon the Charter School. This Court in *Foreman v. Chester–Upland School District*, 941 A.2d 108 (Pa.Cmwlth.), *petition for allowance of appeal granted*, 597 Pa. 235, 951 A.2d 264 (2008), opined that a charter is analogous to a regulatory permit where the government directs how one is to operate. The Charter School in the instant matter was granted its charter conditioned upon the terms set forth in the charter. The "written charter, when signed by the ... charter school's board of trustees ... shall be legally binding on both the local board of school directors of a school district and the charter school's board of trustees." 24 P.S. § 17–1720–A(a). Thus, when the Charter School signed the written charter with the inclusion of the conditions, it chose to become legally bound to the terms of the charter, including the enrollment cap.

Act 61 was not yet in existence at the time the Charter School renewed its charter. The Statutory Construction Act of 1972 (Statutory Construction Act)[7] provides that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. § 1926. Act 61, which mandates that the parties agree to an enrollment cap, has a specific prospective effective date of July 1, 2008. Thus, Act 61 does not apply to the 2007–2008 school year. Further, as Section 1921(b) of the Statutory Construction Act mandates that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it

is not to be disregarded under the pretext of pursuing its spirit[,]" the Charter School was legally bound to the terms of the charter it signed for the 2007–2008 school year. Accordingly, the Secretary properly concluded that the enrollment cap was valid for the 2007–2008 school year.[8]

Because the issue of the Charter School's right to appeal or take formal action to challenge the enrollment cap or other terms of the charter was raised by the parties, this Court notes that the Pennsylvania Supreme Court has already addressed this issue. The Supreme Court held:

> The CSL is explicit as to the procedure a *charter applicant* must utilize to appeal the local board of directors' decision to *deny* a charter application. *Id.* at § 17–1717–A.(i)(2)(5). It also delineates the procedure to be utilized by the CAB [Charter School Appeal Board] on appeal from such decisions, *id.* at §§ 17–1717–A.(6)–(8), and directs that all decisions of the CAB be subject to appellate review by the Commonwealth Court. *Id.* at § 17–1717–A.(i)(10). **The CSL simply does not provide for an appeal from a local board of directors' decision to *grant* a charter.** Upon examination of the CSL in its entirety, **we agree with the Commonwealth Court that the Legislature's omission in this regard was deliberate. We decline to recognize an appeal procedure when the Legislature did not see fit to create one.**

*Mosaica Academy Charter School v. Department of Education*, 572 Pa. 191, 200, 813 A.2d 813, 818–19 (2002) (emphasis add-

---

7. 1 Pa.C.S. §§ 1921–1939.

8. Although we agree with the Secretary's conclusion, we do not agree with his reasoning. "[T]his Court may affirm a decision ... if

there is any basis on the record to support the ... actions, even if we rely on a different basis." *Com. v. Moser*, 999 A.2d 602, 606 n. 5 (Pa.Super.2010).

ed).[9] Thus, after the Charter School signed the charter there was no mechanism to challenge the charter once it was granted.

■ The District finally argues that the Secretary did not properly conclude that the enrollment cap was invalid for school years 2008–2009 and 2009–2010. Specifically, the District contends that the Secretary's conclusion that the establishment of Act 61 requires a subsequent agreement by the Charter School to the enrollment cap is misguided. The District contends that the Secretary has added a requirement not found in the Act. We disagree.

Concerning the 2008–2009 and 2009–2010 school years, Act 61 was in effect and controlling. Based on Act 61's clear language, it does apply. Specifically, Section 1723–A(d)(1) of the CSL provides that "[e]nrollment of students in a charter school ... shall not be subject to a cap or otherwise limited by any past ... action ... unless agreed to by the charter school ... as part of a written charter pursuant to section 1720–A." Further, subsection (d)(2) now provides: "The provisions of this subsection shall apply to a charter school ... regardless of whether the charter was approved prior to or is approved subsequent to the effective date of this subsection." 24 P.S. § 17–1723–A(d)(2). Giving due deference to the Secretary that the Charter School did not agree to the enrollment cap and that his findings are supported by substantial evidence that a unilateral action does not constitute an agreement, the Charter School cannot be limited by a cap that was unilaterally imposed in 2005. Accordingly, the Secretary properly concluded that the enrollment cap

was invalid for school years 2008–2009 and 2009–2010.

For all of the above reasons, the order of the Secretary is affirmed.

## ORDER

AND NOW, this 3rd day of April, 2012, the March 4, 2011 order of the Secretary of Education is affirmed.

DISSENTING OPINION BY President Judge PELLEGRINI.

Because the Walter D. Palmer Leadership Learning Partners Charter School (Charter School) agreed to an enrollment cap on the number of students who would attend its charter school, and nothing in Section 1723–A(d)(1) of the Charter School Law,[1] 24 P.S. § 17–1723–A(d)(1), requires that agreement to take place after its passage, I respectfully dissent. I also dissent from the majority's unnecessary holding that a charter school cannot appeal the grant of a charter with conditions both because such an appeal is allowable and would impede the granting of charters.

Boiling the facts down to their essence, after the School District of Philadelphia (School District) did not act timely on the charter of the Charter School, the State Charter Appeal Board issued the Charter School its first charter in 2000, which did not contain an enrollment cap. In December 2001, the Secretary of Education of the Commonwealth of Pennsylvania declared the School District to be a distressed school district. A School Reform Commission (Reform Commission) was formed to assume all the powers and duties of the school board of the School District. Un-

---

9. The Supreme Court was affirming a previous matter before this Court (*Mosaica Academy Charter School v. Department of Education* (Pa.Cmwlth. No. 803 M.D. 1998, filed July 20, 2000)).

1. Act of March 10, 1949, P.L. 30, *as amended,* added by Section 1 of the Act of June 19, 1997, P.L. 225, retroactive effective July 1, 2008.

der Section 696 of the Public School Code,[2] 24 P.S. § 6–696, the Reform Commission was granted extensive additional powers to operate the School District, including the ability to suspend many provisions of the Public School Code as well as provisions of the Charter School Law.

After the initial charter expired in 2005, the Charter School requested that the Reform Commission renew its charter. In its renewal application, the Charter School stated that it presently had 675 students but wanted to expand its enrollment to 750 students. The Reform Commission approved the renewal charter by resolution at a public meeting in March 2005. The renewal charter was 27 pages in length containing numerous conditions. One of those conditions limited the Charter School's enrollment to 675 students to serve pupils in grades kindergarten through eight. Notwithstanding that it was made aware of that condition, the Charter School did not challenge the determination. Both the Reform Commission and the Charter School signed the charter.[3]

In July 2010, the Charter School requested that the Department of Education (Department) withhold from the School District's subsidy allocation approximately $1.67 million for students it educated during school years 2007–2008, 2008–2009 and 2009–2010 that were above the enrollment cap of 675 students contained in the charter. The Department issued a letter in September 2010 to the School District informing it that pursuant to Section 1725–A(a)(5) of the Charter School Law,[4] 24 P.S. § 17–1725–A(a)(5), it had withheld $1.67 million from the School District's basic education subsidy payment in connection with the request made by the Charter School. It also informed the School District that it could challenge the withholding if it disagreed with the deduction and that the matter could be adjudicated in an administrative proceeding. The School District did object to the withholding, and an administrative hearing was held.

After the hearing, the Department found that there was an agreement by the parties concerning the enrollment cap stating that "while the [Pennsylvania Department of Education] agrees that there is not explicit language in the charter indicating that [Charter School] consented to the enrollment cap by signing it, the Department concludes that the testimony and evidence of the record aptly support the District's contention that ... [Charter School was] aware of the cap prior to and before signing the charter in September 2005." (Department's March 4, 2011 Decision at 13.) However, it went on to find that that agreement was no longer valid

2. Act of March 10, 1949, P.L. 30, *as amended.*

3. Section 1720–A of the Charter School Law, added by the act of June 19, 1997, P.L. 225, 24 P.S. § 17–1720–A, provides:

> **Upon approval of a charter application under section 1717–A, a written charter shall be developed which shall contain the provisions of the charter application** and which shall be signed by the local board of school directors of a school district, by the local boards of school directors of a school district in the case of a regional charter school or by the chairman of the appeal board pursuant to section 1717–A(i)(5) and the board of trustees of the charter school.

> This written charter, when duly signed by the local board of school directors of a school district, or by the local boards of school directors of a school district in the case of a regional charter school, and the charter school's board of trustees, shall act as legal authorization for the establishment of a charter school. **This written charter shall be legally binding on both the local board of school directors of a school district and the charter school's board of trustees.** (Emphasis added.)

4. Added by the act of June 19, 1997, P.L. 225.

after the passage of Section 1723–A(d)(1) of the Charter School Law because the School District had to obtain the legal assent of the Charter School anew. As a result, the Secretary found that the School District properly withheld funds for the school year prior to and including the 2007–2008 school year but was without authority for the following school years. Both the Charter School and the School District appealed.

The majority holds that the Secretary properly found that the School District properly withheld funds for increased enrollment for school years prior to and including 2007–2008 because those years occurred before the passage of any conditions imposed prior to the passage of Section 1723–A(d)(1) and "when the Charter School signed the written charter, it chose to become legally bound to the terms of charter, including the enrollment cap." (Slip Opinion, p. 6.) However, the majority then goes on to hold that the School District improperly withheld funds for the school years thereafter because the same agreement in which the Charter School "chose to become legally bound" is no longer valid. Ostensibly, that position was arrived at because a new agreement had to be entered into after the passage of Section 1723–A(d)(2). I disagree with the majority for the same reason that it affirms the Secretary for the pre-passage years—Section 1723–A(d) does not make agreements on caps on school enrollment entered prior to its passage null and void.

Section 1720–A(a) of the Charter School Law, 24 P.S. § 17–1720–A(a), provides that "This written 3 charter shall be legally binding on both the local board of school directors of a school district and the charter school's board of trustees" applicable. The majority suggests that after the passage of Section 1723–A(d), a new agreement has to be entered. That provision provides:

**Enrollment**

(d)(1) Enrollment of students in a charter school or cyber charter school shall not be subject to a cap or otherwise limited by any past or future action of a board of school directors, a board of control established under Article VII–B, a special board of control established under section 62 or any other governing authority, **unless agreed to by the charter school or cyber charter school as part of a written charter pursuant to section 1720–A.**

(2) *The provisions of this subsection shall apply to a charter school or cyber charter school regardless of whether the charter was approved prior to or approved subsequent to the effective date of this subsection.* (Emphasis added.)

Section 1723–A(d)(1)(2) of the Charter School Law, 24 P.S. § 17–1723–A(d)(1)(2).

As can be seen, all that Section 1723–A(d) requires is that there be an agreement regardless of whether that agreement was entered into before or after its passage. Nothing requires a new agreement. In this case, because the Department concluded that there was an agreement as to the enrollment cap in the written charter, it is binding on the Charter School.[5]

5. In *Foreman v. Chester–Upland School District*, 941 A.2d 108 (Pa.Cmwlth.2008), at issue was whether an "Empowerment Board" operating under the now expired "Educational Empowerment Act," Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 6–693(1), under the authority granted to cancel or renegotiate any contract to which it was a party, authorized it to add enrollment caps to the enrollment levels of existing charter schools. We held that the Empowerment Board's authority to renegotiate contracts was inapplicable because a charter was not a contract, but regulatory in nature because, much like a

Inferring that even though the Charter School "chose" to sign the charter, the majority concludes that the charter cannot be an agreement within the meaning of Section 1723–A(d) because the Charter School could not have appealed the enrollment cap. The majority arrives at that conclusion by relying on *Mosaica Academy Charter School v. Dept. of Education*, 572 Pa. 191, 813 A.2d 813 (2002), to find that a charter grant cannot be appealed even though it contains unacceptable conditions. I disagree with the majority for several reasons.

First, I disagree that *Mosaica* applies because it addresses whether a third party, in that case, the Philadelphia School District, could appeal the grant of charter school application granted by another school district. All that case addresses is whether a third party can challenge the grant of a charter.

permit application, a school district was obligated to issue a charter if the applicant satisfied the criteria set forth in the Charter School Law. If the application was denied, then the State Charter School Appeal Board could reverse that decision, and that decision could be appealed to this court.

There are important distinctions between that case and this one. First, the Reform Commission was operating under Section 696 of the School Code, 24 P.S. § 6–696, which is much different than the Empowerment Act under which the Empowerment Board was operating. The School Code gives the Reform Commission much more powers regarding charter schools. Second, unlike in *Foreman*, where the charter did not have enrollment caps which were trying to be added, the charter in this case has an enrollment cap which was trying to be removed. In both instances, the charter is legally binding on both the local board of school directors of a school district and the charter school's board of trustees as required by Section 1720–A (a) of the Charter School Law.

6. 2 Pa.C.S. § 581 provides

Second, not addressed in *Mosaica* is how it interacts with the Administrative Agency Law. 2 Pa.C.S. § 701 provides:

(a) General rule.—Except as provided in subsection (b), this subchapter shall apply to all Commonwealth agencies regardless of the fact that a statute expressly provides that there shall be no appeal from an adjudication of an agency, or that the adjudication of an agency shall be final or conclusive, or shall not be subject to review.

(b) Exceptions.—None of the provisions of this subchapter shall apply to:

(1) Any matter which is exempt from Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies).[6]

(2) Any appeal from a Commonwealth agency which may be taken initially to the courts of common pleas under 42 Pa.C.S. § 933 (relating to appeals from government agencies).

(a) Commonwealth agencies.—Except as provided in subsection (b), this subchapter applies to all Commonwealth agencies.
(b) Exception.—This subchapter does not apply to:
(1) Proceedings before the Department of Revenue, the Department of the Auditor General or the Board of Finance and Revenue involving the original settlement, assessment or determination or resettlement, reassessment or redetermination, review or refund of taxes, interest or payments made into the State Treasury.
(2) Proceedings before the Secretary of the Commonwealth under the act of June 3, 1937 (P.L. 1333, No. 320),] known as the Pennsylvania Election Code.
(3) Proceedings before the Department of Transportation involving matters reviewable under 42 Pa.C.S. § 933 (relating to appeals from government agencies).
(4) Proceedings before the State System of Higher Education involving student discipline.
(c) Local agencies.—This subchapter applies to all local agencies.

Unless specifically excluded [7] by the specific legislation, the provisions of the Administrative Agency Law apply.

As to who can appeal under the Administrative Agency Law, 2 Pa.C.S. § 702 provides that:

Any person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

Because a charter school could be aggrieved by a condition attached to a charter by a school district, a charter school can appeal such a condition, including an enrollment cap if it did not, as here, agree to it.

This leads to my final reason—if a charter school could not appeal a condition attached to the grant of a charter, that would effectively mean that a charter school would be effectively denied a charter even though the charter was granted. For example, a school district could attach enumerable conditions—say, not have a management company operate the school or have substantial amounts of cash on hand—that would difficult or impossible to meet. Without allowing a charter school to appeal a condition attached to a charter, it would mean that practically that charter school could not be established.

Accordingly, I respectfully dissent.

---

7.  2 Pa.C.S. § 106 provides that, "No subsequent statute shall be held to supersede or modify the provisions of this title except to the extent that such statute shall do so expressly."