IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marianne Sawicki,                          :
                    Appellant              :
                                           :
        v.                                 :  No. 1046 C.D. 2021
                                           :
David W. Wessels, in his official          :
capacity as Open Records Officer           :
of Borough of Huntingdon                   :  Submitted: September 23, 2022

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                              FILED:  December 19, 2022

        Currently before us is Appellant Marianne Sawicki's (Sawicki)[1] *pro se* appeal, in which she challenges an order issued by the Court of Common Pleas of Huntingdon County (Common Pleas) on August 25, 2021. Through that order, Common Pleas dismissed Sawicki's mandamus action against Appellee David W. Wessels, in his official capacity as Open Records Officer of Borough of Huntingdon (Wessels); declined Sawicki's request to award her attorney's fees, costs of

---

[1] Sawicki was, until recently, an active, Pennsylvania-licensed attorney; however, she apparently retired from the practice of law at some point subsequent to February 24, 2022, the date upon which she filed her reply brief with our Court. *See* Sawicki's Reply Br. at 15 (Sawicki identifying herself as "Marianne Sawicki, Esquire"); THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA, https://www.padisciplinaryboard.org/for-the-public/find-attorney/attorney-detail/313471 (last visited Dec. 19, 2022) (stating that Sawicki's law license is currently retired).

litigation, and monetary penalties pursuant to the Right-to-Know Law (RTKL);[2] and denied Sawicki's motion for sanctions against Wessels. After thorough review, we affirm Common Pleas' order in part and vacate and remand that order in part.

## I. Background

On October 1, 2020, Sawicki filed a *pro se* request with the Borough of Huntingdon (Borough) seeking the following records:[3]

> 1. Any invoices submitted to the Borough for expenses or for professional services by the Borough solicitor during the relevant time[, *i.e.*, between August 1, 2019, and June 30, 2020],[] including but not limited to itemized phone bills.
>
> 2. Any records of payments by the Borough to its solicitor during the relevant time.
>
> 3. Any correspondence sent by the Borough to its solicitor or received by the Borough from its solicitor during the relevant time that mentions Barbara Kissinger, in any medium, including but not limited to paper, facsimile . . . , and electronic mail, with any attachments and enclosures.
>
> 4. Any correspondence sent by the Borough to its solicitor or received by the Borough from its solicitor during the relevant time that mentions . . . Sawicki, in any medium. . . .
>
> 5. Any correspondence sent by the Borough, or on behalf of the Borough by its solicitor, to the Area Agency on

---

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[3] "Record" is defined in Section 102 of the RTKL as:

> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

65 P.S. § 67.102.

Aging or to Huntingdon County or Huntingdon County's solicitor, judicial officers, law enforcement officers, or other agents, during the relevant time, that mentions Barbara Kissinger, in any medium. . . .

6. Any correspondence sent by the Borough, or on behalf of the Borough by its solicitor, to the Area Agency on Aging or to Huntingdon County or Huntingdon County's solicitor, judicial officers, law enforcement officers, or other agents, during the relevant time, that mentions . . . Sawicki, in any medium....

7. Any correspondence received by the Borough, or on behalf of the Borough by its solicitor, from the Area Agency on Aging or from Huntingdon County or Huntingdon County's solicitor, judicial officers, law enforcement officers, or other agents, during the relevant time, that mentions Barbara Kissinger, in any medium. . . .

8. Any correspondence received by the Borough, or on behalf of the Borough by its solicitor, from the Area Agency on Aging or from Huntingdon County or Huntingdon County's solicitor, judicial officers, law enforcement officers, or other agents, during the relevant time, that mentions . . . Sawicki, in any medium. . . .

9. Any records of the Borough police department that mention Barbara Kissinger during the relevant time, including but not limited to incident report number 19-0001492.

10. Any notes or logs of any conversations between the Borough and the Borough solicitor during the relevant time, including but not limited to telephonic conversations and face-to-face conversations, that mention Barbara Kissinger.

11. Any notes or logs of any conversations between the Borough and the Borough solicitor during the relevant time, including but not limited to telephonic conversations and face-to-face conversations, that mention . . . Sawicki.

12. Any correspondence sent by the Borough, or by the Borough's solicitor, to the Disciplinary Board of the Supreme Court of Pennsylvania, during the relevant time, in any medium. . . .

13. Any correspondence received by the Borough, or by its solicitor, from the Disciplinary Board of the Supreme Court of Pennsylvania, during the relevant time, in any medium. . . .

14. Any notes or logs of any conversations between Borough staff or other agents and the Disciplinary Board of the Supreme Court of Pennsylvania, including but not limited to telephonic conversations and face-to-face conversations.

Office of Open Records (OOR) Final Determination (Determination) at 1-3 (footnote omitted); Reproduced Record (R.R.) at 5a-7a. The Borough did not respond to Sawicki's request within five business days and, as such, the request was deemed denied as of October 8, 2020. OOR Determination at 3; R.R. at 7a; *see* 65 P.S. § 67.901.

On October 15, 2020, Sawicki appealed the Borough's deemed denial of her request to the OOR. OOR Determination at 3; R.R. at 7a. Four days later, Borough personnel notified Sawicki that they had compiled 213 pages of records in response to her request, which would be available for her to pick up at the Borough's main office. OOR Determination at 3; R.R. at 7a; Sawicki's Br. in Support of Peremptory Judgment Awarding Relief Under Sections 1304 & 1305 of RTKL, Ex. 4. In addition, Wessels informed Sawicki via letter on October 19, 2020, that he had granted Items 1 and 2 of her request, in full. R.R. at 116a.

> However, [Wessels also notified Sawicki that he had] denied [her request regarding] some records responsive to Items 3-8, arguing that those records [were] protected by . . . attorney-client privilege or [were] internal, predecisional, and deliberative, *see* 65 P.S. § 67.708(b)(10)(i), related to a noncriminal investigation, see 65 P.S. § 67.708(b)(17), and/or reflect[ed] communications between the Borough and its insurance carrier, *see* 65 P.S. § 67.708(b)(27). [Additionally, Wessels] assert[ed] that no records responsive to Items 10-14 exist[ed], and that the Huntingdon County District

4

> Attorney's Office . . . would be the agency best positioned to respond to Items 5-9 to the extent [Sawicki sought] criminal records [through those portions of her request].[]
>
> On December 4, 2020, . . . the Borough [informed the OOR] that it had provided [Sawicki] "with all the requested material that is lawfully permitted."

OOR Determination at 3-4 (footnote omitted). On December 16, 2020, the OOR dismissed Sawicki's appeal in part, with regard to the responsive records the Borough had already provided to Sawicki; granted it in part, on the basis that the Borough had failed to present any evidence to support its claims; and dismissed it in part for lack of jurisdiction, to the extent that Sawicki had sought judicial records. *Id.* at 9a-11a. Accordingly, the OOR ordered the Borough "to produce all additional responsive records that are not judicial records within thirty days." *Id.* at 11a. Of note, the OOR made clear that it had not conclusively determined whether any additional, responsive records actually remained to be released, as it "[was] mindful that an agency cannot produce records that do not exist within its 'possession, custody or control' and, accordingly, [that it was] not ordering the creation of any records." *Id.* at 10a n.6. Instead, the OOR stated that its ruling was based upon its general policy that, "[a]bsent an agency providing a sufficient evidentiary basis that no responsive records exist, the OOR will order disclosure of responsive public records." *Id.* at 10a-11a n.6. Neither the Borough nor Sawicki appealed the OOR's Determination.

Thereafter, on January 4, 2021, Wessels sent Sawicki a "Certification," in which he provided an update regarding his efforts to fulfill her request. *Id.* at 119a-20a. In relevant part, Wessels stated therein:

> 4. Upon receipt of the request, I conducted a thorough examination of files in the possession, custody and control of the [Borough] for records responsive to the request underlying this appeal, specifically, I researched records

responsive to your October 1, 2020 request[], [Items] 3-9 and 10-14.

5. Additionally, I have inquired with relevant [Borough] personnel and, the Huntingdon Borough Solicitor regarding whether additional files exist other than the documents that were originally provided that were not subject to attorney-client privilege or other privilege or exception to the [RTKL].

6. After conducting a good faith search of the [Borough's] files, there are no additional records during the requested time[]period that are responsive to your requests. By way of further response, I hereby certify and attest that the [Borough], its personnel, and its Solicitor had no contact or communication whatsoever with the Pennsylvania Disciplinary Board of the Supreme Court of Pennsylvania concerning you or your conduct during the period in question.

7. The responsive records have been previously provided to you.

8. I certify that the documents which were previously provided are a complete and true copy of the original responsive records.

*Id.*

Despite Wessels' attestation that the Borough had already provided Sawicki with all of the responsive records, she elected to file suit against him in his official capacity on January 25, 2021. In her Complaint, Sawicki averred that the Borough had violated the terms of the OOR's Determination by "refus[ing] to produce the additional records responsive to Items 3 through 8 [of her request.]" Complaint, ¶19. Accordingly, Sawicki requested that Common Pleas issue a writ of mandamus compelling Wessels to disgorge those additional records; declare that the Borough had acted in bad faith under the RTKL by failing to fully comply with the OOR's directive; assess a civil penalty against Wessels pursuant to the RTKL; award her monetary damages; and grant any other relief that Common Pleas "deem[ed] to be

6

fair and just." *Id.*, Wherefore Clause. Wessels responded by submitting an Answer with New Matter on February 10, 2021, in which he repeatedly reasserted that he had already provided Sawicki with all responsive records and, in addition, raised a number of affirmative defenses. *See* Answer with New Matter, ¶¶5, 14, 19, 30-35. Thereafter, Sawicki replied to Wessels' Answer with New Matter on February 16, 2021.

Common Pleas then convened a hearing on April 13, 2021, but ultimately adjourned the proceeding without making any rulings. In doing so, Common Pleas gave the parties a chance to see whether they could agree to a joint stipulation that would, in effect, enable Common Pleas to confine its fact-finding to determining whether the Borough had exhibited bad faith during its handling of Sawicki's request. *See* R.R. at 43a-47a. It is unclear whether this effort was entirely successful,[4] as, on April 19, 2021, Sawicki submitted a Motion for Sanctions against Wessels and his former counsel.[5] Therein, Sawicki contended that Common Pleas should impose sanctions pursuant to Pennsylvania Rules of Civil Procedure 1023.1 and 1023.2,[6] because, in her view, Wessels' Answer with New Matter was replete with

---

[4] Common Pleas stated in its November 24, 2021 opinion that, "[t]he parties were unable in court to agree to the language for a stipulation but agreed to keep working on a means to resolve the question of the nonexistence of responsive records. By letter dated April 19, [2021,] Sawicki informed [Common Pleas] that 'the parties agreed that this question could be resolved through unsworn declarations under 18 Pa. C.S. [§] 4904.'" Common Pleas Op., 11/24/21, at 6. Sawicki's letter is not present in either Sawicki's Reproduced Record or the original record certified to this Court by Common Pleas.

[5] Wessels' original counsel, who had been responsible for filing the Answer with New Matter, withdrew from this matter on March 11, 2021, and was simultaneously replaced by another attorney. *See* Withdrawal of Appearance/Entry of Appearance, 3/11/21, at 1.

[6] Pennsylvania Rule of Civil Procedure 1023.1 states, in relevant part:

**(Footnote continued on next page…)**

7

unsupported factual averments and baseless legal arguments, many of which related to the existence (or nonexistence) of additional responsive records. Mot. for Sanctions, ¶¶6-51, Wherefore Clause.

Common Pleas then held a second hearing on June 21, 2021. At the outset, Sawicki stated that she was satisfied that "the issue of whether any[ ]more records

(c) The signature of an attorney or pro se party constitutes a certificate that the signatory has read the pleading, motion, or other paper. By signing, filing, submitting, or later advocating such a document, the attorney or pro se party certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation,

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law,

(3) the factual allegations have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual allegations are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(d) If, after notice and a reasonable opportunity to respond, the court determines that subdivision (c) has been violated, the court may, subject to the conditions stated in [Pennsylvania] Rules [of Civil Procedure] 1023.2 through 1023.4, impose an appropriate sanction upon any attorneys, law firms and parties that have violated subdivision (c) or are responsible for the violation.

Pa. R.Civ.P. 1023.1. As for Pennsylvania Rule of Civil Procedure 1023.2, it provides, in relevant part, that "[a]n application for sanctions under this rule shall be made by motion, shall be made separately from other applications and shall describe the specific conduct alleged to violate [Pennsylvania] Rule [of Civil Procedure] 1023.1(c)." Pa. R.Civ.P. 1023.2(a).

exist is moot[,]" due to Wessels' production of affidavits from several Borough staff, each of whom had attested that there were no additional responsive records left for the Borough to divulge to Sawicki. R.R. at 48a-49a. Nevertheless, Sawicki maintained that she was still entitled to attorney's fees, civil penalties, and costs of litigation under the RTKL, as well as to have Common Pleas grant her Motion for Sanctions. *See* R.R. at 49a-98a. Of particular note, Sawicki disputed Common Pleas' assertion that she was representing herself *pro se*, insisting instead that "[she was] not a *pro se* litigant[,]" that "[she was appearing in court] as [her] law office[,]" and that "[her] law office is a separate entity from [her as an individual]." *Id.* at 60a. Sawicki even went so far as to refer to herself in the third person, in an attempt to distinguish "[her] client, Marianne Sawicki" from her role as the principal "of the law office representing Marianne Sawicki" in the matter. *See id.* at 80a; *see also id.* at 67a-70a, 73a, 97a-98a. Common Pleas was not swayed by Sawicki's arguments and, on August 25, 2021, issued an order denying Sawicki's request for attorney's fees, civil penalties, and costs of litigation pursuant to the RTKL, as well as her Motion for Sanctions, and dismissed her mandamus action. This appeal to our Court followed shortly thereafter.[7]

## II. Discussion

Sawicki offers several arguments for our consideration, which we have reordered and summarized as follows. First, Common Pleas' implicit conclusion that the Borough produced all responsive records in October 2020 is not supported by substantial evidence and is contrary to the OOR's finding in its Determination that the Borough had not release all such records. Sawicki's Br. at 9-13. Second, Common Pleas erred as a matter of law by concluding that Sawicki could not be

---

[7] Common Pleas also issued a second opinion in this matter on November 24, 2021, in response to Sawicki's Statement of Errors Complained of on Appeal.

9

awarded attorney's fees and costs of litigation under the RTKL because she was representing herself *pro se*, in spite of the fact that Sawicki was a licensed attorney at the time. *Id.* at 21-27. Third, Common Pleas abused its discretion and committed errors of law by determining that the Borough had not acted in bad faith and consequently declining to award attorney's fees, costs of litigation, and civil damages to Sawicki pursuant to the RTKL. *Id.* at 13-21. Finally, Common Pleas abused its discretion by denying Sawicki's Motion for Sanctions. *Id.* at 28-33.[8]

Broadly speaking, once all appellate rights have either been exhausted or waived regarding an RTKL request, the proper manner for a requester to enforce compliance with a final order or determination directing disclosure of certain records is via mandamus. *See Capinski v. Upper Pottsgrove Twp.*, 164 A.3d 601, 606 (Pa. Cmwlth. 2017). When considering an appeal from a lower court's disposition of such a mandamus action, "[o]ur review [is limited to] consider[ing] whether [Common Pleas'] findings of fact are supported by substantial evidence or whether [Common Pleas] committed an error of law or abused its discretion." *Id.* at 605 n.4. Similarly, we are limited to reviewing the lower court's disposition of a motion for sanctions made pursuant to Pennsylvania Rules of Civil Procedure 1023.1 and 1023.2 using an abuse of discretion standard. *Pane v. Indian Rocks Prop. Owners Ass'n, Inc. of Ledgedale*, 167 A.3d 266, 272 n.5 (Pa. Cmwlth. 2017).

Turning to Sawicki's first argument, regarding Common Pleas' implied conclusion that the Borough had turned over all responsive records in October 2020, we conclude that it is meritless. In this instance, Sawicki puts forth a tortured reading of the Determination, one that is simply not supported by the language used therein by the OOR. Contrary to Sawicki's assertion that the OOR had held that additional,

---

[8] Sawicki does not contest Common Pleas' dismissal of her mandamus action. Therefore, we will not address the propriety of that dismissal.

responsive records both existed and had not been given to her by the Borough, it is unmistakably evident that this is not the case. Rather, the OOR merely ruled that the Borough had failed to satisfy its burden of establishing that any such outstanding records were exempt from disclosure. *See* R.R. at 9a-11a. Sawicki conspicuously ignores the OOR's statement in its Determination that it could not, and would not, order disclosure of records that did not exist, despite the Borough's failure to carry its burden of proof at that juncture; such qualification would obviously not have been necessary had the OOR definitively concluded that additional records remained to be released by the Borough. *See id.* at 10a-11a n.6. Furthermore, in affirming the OOR on this point, Common Pleas simply followed the OOR's lead by acknowledging that Wessels' October 19, 2020 letter created the impression that the Borough had more records that were responsive to Sawicki's request, while also concluding that Wessels had corrected this impression through his January 4, 2021 Certification, in which he stated that there were no such remaining records. *See* Common Pleas Op., 8/25/21, at 10. Consequently, we discern no basis for disturbing Common Pleas' reasoning on this point.

Sawicki's second argument, that Common Pleas erred by ruling that she could not be awarded attorney's fees and costs of litigation under the RTKL because she was representing herself *pro se*, is marginally better than her first. Section 1304(a) of the RTKL authorizes our Commonwealth's courts to award attorney's fees and costs of litigation when a governmental agency's disposition of a RTKL request is subsequently reversed and the relevant court determines that the agency had handled the request in bad faith. *Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, 243 A.3d 19, 34 (Pa. 2020).[9]

---

[9] Section 1304 of the RTKL reads as follows, in relevant part:
**(Footnote continued on next page…)**

In this instance, Common Pleas did not err by concluding that Sawicki was barred from recovering attorney's fees under the RTKL, because it is clear that she represented herself *pro se* in this matter. It is well-settled that the courts of our Commonwealth follow "[t]he American Rule[, which] states that a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties[,] or some other established exception." *Mosaica Acad. Charter Sch. v. Com. Dep't of Educ.*, 813 A.2d 813, 822 (Pa. 2002). Even in instances where an exception to this rule exists, though, a party cannot recover attorney's fees or an equivalent kind of compensation for their efforts if they litigated their case *pro se*. *Westmoreland Cnty. Indus. Dev. Auth. v. Allegheny Cnty. Bd. of Prop. Assessment, Appeals & Rev.*, 723 A.2d 1084, 1086-87 (Pa. Cmwlth. 1999). This bar applies in RTKL matters as well and serves to prevent

> (a) Reversal of agency determination.--If a court reverses the final determination of the appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:
>
>> (1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of this act[.]

65 P.S. § 67.1304. The Supreme Court has ruled that this statutory language is ambiguous and, as such, attorney's fees and costs of litigation may be awarded in a multitude of scenarios, not just where a court has reversed a governmental agency's actual or deemed denial of a records request. *See Uniontown Newspapers,* 243 A.3d at 34.

"When a state agency is the subject of a RTKL enforcement action, a single judge of the Commonwealth Court serves as the arbiter of disputes over attorneys' fees[,] civil penalties[, and costs of litigation]. When, as in this case, a local agency is the subject, the common pleas court serves that role." *Brunermer v. Apollo Borough*, (Pa. Cmwlth., No. 661 C.D. 2021, filed Jul. 28, 2022), slip op. at 9 n.8, 2022 WL 2976345, at *4 n.8; *see* Section 414(a) of the Internal Operating Procedures of the Commonwealth Court of Pennsylvania, 210 Pa. Code § 69.414(a) (unreported Commonwealth Court opinions issued after January 15, 2008, may be cited for their persuasive value).

litigants like Sawicki from being awarded such fees or similar compensation relating to the handling of a request for disclosure of government records. *McFalls v. Mun. of Norristown*, (Pa. Cmwlth., No. 737 C.D. 2021, filed, May 17, 2022), slip op. at 9-10, 2022 WL 1553720, at *4. Sawicki's argument to the contrary, *i.e.*, that this bar does not apply to her because she exists as, in essence, two distinct personae inhabiting one body, is unavailing. Though Sawicki raises an interesting ontological question that would not necessarily be out of place in an entry-level philosophy seminar, in the courts of this Commonwealth, a lawyer representing herself is no more able to obtain an award of attorney's fees or their equivalent than a *pro se* individual who does not have a law license. *Cf. Kay v. Ehrler*, 499 U.S. 432, 437 (1991).[10]

---

[10] Though *Kay* dealt with a request for attorney's fees pursuant to Section 1988 of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, former Justice Stevens' discussion of the perils of making such an award to a litigant who is both a licensed attorney and is representing themselves *pro se* is still extremely relevant to the situation at-hand:

> Even a skilled lawyer who represents himself is at a disadvantage in contested litigation. Ethical considerations may make it inappropriate for him to appear as a witness.[] He is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom. The adage that "a lawyer who represents himself has a fool for a client" is the product of years of experience by seasoned litigators.
>
> A rule that authorizes awards of counsel fees to *pro se* litigants—even if limited to those who are members of the bar—would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf.

*Kay*, 499 U.S. at 437 (footnote omitted).

We come to a different conclusion, however, regarding Sawicki's request for costs of litigation. The term "costs of litigation," which is used in Section 1304 of the RTKL, is not defined in the statute or elsewhere in the RTKL.

> Where a term is not defined, we are instructed that 'words and phrases shall be construed according to rules of grammar and according to their common and approved usage.' 1 Pa. C.S. § 1903(a). Moreover, in ascertaining the common and approved usage or meaning, we may [rely upon] the dictionary definitions of the terms left undefined by the legislature.

*P.R. v. Pa. Dep't of Pub. Welfare*, 759 A.2d 434, 437 (Pa. Cmwlth. 2000). As defined in Black's Law Dictionary, costs of this nature are described in two relevant ways, first as "[t]he charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees[,]" and, second, as "[t]he expenses of litigation, prosecution, or other legal transaction, esp[ecially] those allowed in favor of one party against the other." COST, Black's Law Dictionary (11th ed. 2019). Furthermore, Black's makes clear that costs and attorney's fees are not fully synonymous, noting that "[s]ome but not all states allow parties to claim attorney's fees as a litigation cost." *Id.* The upshot of this is that, under Section 1304 of the RTKL, attorney's fees and costs of litigation are classified differently and do not overlap with each other. *Cf. Merlino v. Delaware Cnty.*, 728 A.2d 949, 951 (Pa. 1999) (attorney's fees are not to be categorized as a recoverable cost of litigation unless expressly provided for by statute). Therefore, given that litigation costs, exclusive of attorney's fees, constitute tangible expenditures which occur regardless of whether a party has counsel or is acting in a *pro se* fashion,[11] Sawicki's

---

[11] By contrast, a *pro se* litigant who requests an award of attorney's fees is essentially asking to be paid for the time they have invested in their case, rather than to be made whole for actual payments they made to secure and maintain outside legal representation.

14

representation of herself in this matter does not stand as an impediment to her recovering those costs from Wessels.

Moving on to Sawicki's third argument, we agree with her that Common Pleas erred as a matter of law by employing an inapplicable form of the bad faith standard when denying her request for civil penalties and costs of litigation under the RTKL.[12] As already noted *supra*, Section 1304(a) of the RTKL permits an award of litigation costs in the event the relevant court finds that a governmental agency handled a records request made under that law in bad faith. *Uniontown Newspapers*, 243 A.3d at 34. The same is true for civil penalties, which, per Section 1305(a) of the RTKL, "[a] court may impose [in the amount] of not more than $1,500 if an agency denied access to a public record in bad faith." 65 P.S. § 67.1305(a). "An example of bad faith is a local agency's failure to comply with the mandate of Section 901 of the RTKL, [65 P.S. § 67.901,] which requires that a local agency make a good faith search for information responsive to a request and determination of whether that information is public." *Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1140-41 (Pa. Cmwlth. 2017). "[A] good faith response - either to produce records or assert an exemption - cannot occur absent a good faith search, followed by collection and review of responsive records, so an agency has actual knowledge about the contents of the relevant documents." *Uniontown Newspapers*, 243 A.3d at 29-30. In this context, a determination regarding whether an agency acted in good or bad faith and, thus, whether a litigant is entitled to an award under either Section 1304(a) or

---

[12] We do not reach the portion of this specific argument as it relates to attorney's fees because, as just discussed, Sawicki could not recover them in this matter due to her *pro se* status.

15

1305(a) of the RTKL, is predicated "not on the mental state of the actor but [upon] the actions taken by the agency." *Bagwell*, 155 A.3d at 1141.[13]

In this instance, however, Common Pleas failed to use this standard when it declined to award Sawicki civil penalties and costs of litigation pursuant to the RTKL. Instead, Common Pleas made clear that it "decline[d] to find that [Wessels] acted in bad faith in this proceeding since [it did] not believe any evidence point[ed] to a *willful, purposeful, dishonest intent* on [the] part of the Borough to deny [Sawicki] access to public records." Common Pleas Op., 8/25/21, at 10 (emphasis added); *see id.* at 8 (quoting *Davis v. Pa. Co. for Insurances on Lives & Granting Annuities*, 12 A.2d 66, 69 (Pa. 1940)) ("[B]ad faith, or dishonesty, is, unlike negligence, wil[l]ful."). Common Pleas thus erred as a matter of law by focusing on Wessels' mental state and the intent of Borough staff, as neither of these things had any bearing in this context upon whether the Borough handled Sawicki's request in bad faith.

Finally, as to Sawicki's remaining argument, we are unpersuaded that Common Pleas abused its discretion by denying her Motion for Sanctions. As Common Pleas explained, it denied this Motion for the following reasons.

> First, after a careful examination of the pleadings, we concluded that [Wessels' Answer with New Matter] did not violate [Pennsylvania] Rule [of Civil Procedure] 1023.1(c). The [Motion for Sanctions] and the [Answer with New Matter] reflect the strongly held opinions that the parties have with respect to the [OOR's Determination] in the underlying RTKL case. [Sawicki]

---

[13] The language used in *Bagwell* appears to suggest that the standard for granting an award under Section 1304(a) is different than the standard applicable to awards made pursuant to Section 1305(a), in that a culpable mental state is required for the former, but is not necessary for the latter. *See Bagwell*, 155 A.3d at 1140-41. However, our Supreme Court has made clear that the same formulation of the bad faith standard applies when dealing with awards made pursuant to either of these RTKL provisions. *See Uniontown Newspapers*, 243 A.3d at 33-34.

believes and repeatedly argued that the OOR . . . found as fact that the Borough was in possession of responsive public records requested by [her] and that the failure of the Borough to appeal that finding foreclosed the defense that the records did not exist. [Wessels] on the other hand argued that the [OOR] found as fact only that the Borough did not prove that no responsive records existed, and therefore, the defense of impossibility was available to him in this action.

The fact therefore that the parties in this case had significantly different opinions regarding the import of the OOR determination that were legitimate and not frivolous defeats the basis for the motion.

Next, [Sawicki's] allegations in the [Motion for Sanctions] that [Wessels' A]nswer with [N]ew [M]atter "created confusion at a motions hearing on April 13, 2021, and thereby impeded these proceedings, inconv[e]n[i]enced [Common Pleas], caused unnecessary delay, and needlessly increased the costs of litigating the complaint in mandamus" are in all respects not true.

There was no confusion on April 13[, 2021]. The parties and [Common Pleas] immediately focused on the issue of the existence of responsive records. [Wessels] had three witnesses present to testify as to the nonexistence of the records. [Sawicki] objected to testimony and [Common Pleas] agreed to continue to another date hearing on this seminal issue. [Sawicki] then agreed to stipulate to the nonexistence of responsive records. She told [Common Pleas] "I am persuaded by the panoply of witnesses and the vehemence of counsel's argument that there are no more records today that are responsive." [Tr., 4/13/21, at 16]. The parties were unable in court to agree to the language for a stipulation but agreed to keep working on a means to resolve the question of the nonexistence of responsive records. By letter dated April 19, [2021,] Sawicki informed [Common Pleas] that "the parties agreed that this question could be resolved through unsworn declarations under 18 Pa. C.S [§] 4904."[14] In short, a great deal was accomplished on April 13, [2021,]

---

[14] As discussed in footnote 4 *supra*, Sawicki's letter is not included in either her Reproduced Record or the original record certified by Common Pleas to this Court.

17

and the way was paved so that [Sawicki] could announce at the opening of the June 24[, 2021] hearing that the issue of the records was moot.

Our third reason for denying the Motion for Sanctions relates to the timing of the motion and the fees claimed on account of the motion.

The [Motion for Sanctions] was filed April 19, 2021[,] or over two months after [Wessels] filed his [A]nswer [with N]ew [M]atter. It was filed on the same day . . . Sawicki advised [Common Pleas] that the question regarding the existence or nonexistence of responsive records was resolved.

[Wessels] filed a response to the [M]otion and [Sawicki] filed a reply to the response. In her reply[, Sawicki] appended an 'updated invoice' for her fees and costs. Attached to this Memorandum is a copy of the invoice. As reference to the invoice will show, [Sawicki] claimed $4818.75 for fees and costs through April 13[, 2021]. That claim therefore included her time spent replying to [Wessels' A]nswer with . . . [N]ew [M]atter. As reference to the invoice will show, by June 24[, 2021,] the claim for fees and costs had increased to $16,617.87. Again, as reference to the invoice will show, all but a few of the charges between April 13[, 2021,] and June 24[, 2021,] were for work performed on the [Motion for Sanctions] and not the mandamus action. In addition, as reference to the invoice will show, . . . Sawicki increased her hourly rate from $50.00 to $300.00 per hour. The bottom line is that . . . Sawicki wants the citizens of [the] Borough to pay her $11,799.12 for her work on a motion unrelated to this mandamus action and in an action which she lost.

Common Pleas Op., 11/24/21, at 5-7. Common Pleas' reasoning is sound and, as such, we will not meddle with its discretionary decision to deny Sawicki's Motion for Sanctions.

### III. Conclusion

In accordance with the foregoing, we vacate Common Pleas' August 25, 2021 order, with regard to Common Pleas' denial of Sawicki's request for an award of

18

civil penalties and costs of litigation pursuant to the RTKL, and remand this matter to Common Pleas with instructions that it rule upon these requests by applying the proper legal standard for evaluating claims of bad faith in RTKL matters. In all other respects of this appeal, however, we affirm Common Pleas' order.

                                            _____

                                            ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Marianne Sawicki, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1046 C.D. 2021 |
| | : | |
| David W. Wessels, in his official | : | |
| capacity as Open Records Officer | : | |
| of Borough of Huntingdon | : | |

**O R D E R**

AND NOW, this 19th day of December, 2022, it is hereby ORDERED:

1.     The Court of Common Pleas of Huntingdon County's (Common Pleas) August 25, 2021 order is VACATED IN PART, with regard to Common Pleas' denial of Appellant Marianne Sawicki's (Sawicki) request for an award of civil penalties and costs of litigation pursuant to Sections 1304(a) and 1305(a) of the Right-to-Know Law (RTKL), Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.1304(a), 67.1305(a);

2.     Common Pleas' August 25, 2021 order is AFFIRMED IN PART, as to the remainder of the issues raised by Sawicki in her appeal to our Court;

3.     This matter is REMANDED IN PART to Common Pleas, with instructions that, when ruling upon Sawicki's demand for civil penalties and costs of litigation, it shall use the proper legal standard for evaluating bad faith claims pertaining to governmental agencies' handling of RTKL records requests.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge