IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Betty Bell, an adult individual, and :
Propel Schools, d/b/a Propel Charter :
School – Homestead, Propel Charter :
School – Sunrise, d/b/a Propel :
Braddock Hills, Propel Charter School – :
Pitcairn, and Propel Charter School – :
Hazelwood, :
                Appellants :
 :
         v. :
 : No. 1259 C.D. 2019
Wilkinsburg School District : Argued: October 11, 2023


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON           FILED: January 31, 2024

        Wilkinsburg School District (School District) transports its students to and from school in school buses. However, the School District does not provide school buses to transport students who live in the School District but attend charter schools outside the School District. Instead, the School District provides those students with public transit passes, leaving even elementary charter school students to negotiate the public transit system, including transfers, on their own.

Betty Bell (Bell), an adult individual, and Propel Schools, d/b/a Propel Charter School – Homestead, Propel Charter School – Sunrise, d/b/a Propel Braddock Hills, Propel Charter School – Pitcairn, and Propel Charter School – Hazelwood (collectively, Charter Schools) appeal from an order of the Court of Common Pleas of Allegheny County (trial court) concluding that the School District's provision of public transit passes to Charter Schools' students does not violate applicable law. The trial court reasoned that the relevant statutory provisions require only that the School District provide access to free transportation, such that students do not have to walk over one and one-half miles or on hazardous streets. Upon review, we are constrained to affirm the trial court's order.

## I. Background

Before the 2017-18 school year, the School District contracted to provide school bus transportation to all resident School District and charter school students in the catchment. During the summer of 2018, after a consultant study, the School District announced that it was switching to free passes on public transportation for students attending charter schools outside School District boundaries, beginning in the 2018-19 school year. The School District anticipated the switch would save some $130,000, because the School District would receive higher reimbursements for the bus passes than for school bus contracts. The School District did not hold a public meeting or seek approval from the Pennsylvania Department of Education (Department) before making this change.

Charter Schools then arranged to provide their own buses for students in kindergarten through grade five, but students in grades six and higher had to use

2

the public transportation passes provided by the School District. It is unclear whether Charter Schools have continued to provide buses for the younger students.

Bell's grandchildren lived with her. They attended Charter Schools, and at least one of them had to use the transit passes. In October 2018, Charter Schools and Bell sued the School District seeking declaratory and injunctive relief. They asserted that the transit pass arrangement violated the Public School Code of 1949 (School Code)[1] and the Charter School Law.[2]

The trial court upheld the School District's provision of transit passes. The trial court concluded that the School Code and the Charter School Law allow districts to use public transportation and that any requirement to transport both kinds of students under the same conditions pertains to travel distance and safety, not the specific mode of transportation.

On appeal, this Court reversed in an opinion limited to the threshold issue of whether the School District had to obtain the Department's approval for a change in its transportation provisions. Because we concluded such approval was required, we did not reach any other issues. After granting allocatur, our Supreme Court reversed, holding that the School District did not have to seek Department approval. *See Bell v. Wilkinsburg Sch. Dist.*, 283 A.3d 245 (Pa. 2022) The Supreme Court therefore remanded the matter to this Court for us to consider the remaining issues. *Id.*

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-101 – 27-2702.

[2] Added by the Act of June 19, 1997, P.L. 225, No. 22, *as amended*, 24 P.S. §§ 17-1701-A – 17-1751-A.

## II. Applicable Statutory Provisions

Section 1726-A of the Charter School Law provides, in pertinent part:

(a) Students who attend a charter school located in their school district of residence, a regional charter school of which the school district is a part or a charter school located outside district boundaries at a distance not exceeding ten (10) miles by the nearest public highway shall be provided free transportation to the charter school by their school district of residence on such dates and periods that the charter school is in regular session whether or not transportation is provided on such dates and periods to students attending schools of the district. Transportation is not required for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway from the charter school in which the students are enrolled unless the road or traffic conditions are such that walking constitutes a hazard to the safety of the students when so certified by the Department of Transportation, except that if the school district provides transportation to the public schools of the school district for elementary students, including kindergarten students, residing within one and one-half (1.5) miles or for secondary students residing within two (2) miles of the nearest public highway under nonhazardous conditions, transportation shall also be provided to charter schools under the same conditions . . . .

. . . .

(b) In the event that the Secretary of Education determines that a school district is not providing the required transportation to students to the charter school, the Department of Education shall pay directly to the charter school funds for costs incurred in the transportation of its students . . . .

24 P.S. § 17-1726-A.

Section 1361 of the School Code provides, in pertinent part:

4

(1) The board of school directors in any school district may, out of the funds of the district, provide for the free transportation of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled, provided that such school is not operated for profit and is located within the district boundaries or outside the district boundaries at a distance not exceeding ten miles by the nearest public highway. . . . When provision is made by a board of school directors for the transportation of public school pupils to and from such schools . . . , the board of school directors shall also make identical provision for the free transportation of pupils who regularly attend nonpublic kindergarten, elementary and high schools not operated for profit to and from such schools . . . . Such transportation of pupils attending nonpublic schools shall be provided during regular school hours on such dates and periods that the nonpublic school not operated for profit is in regular session, according to the school calendar officially adopted by the directors of the same in accordance with provisions of law. The board of school directors shall provide such transportation whenever so required by any of the provisions of this act or of any other act of Assembly.

(2) The board of school directors in any school district may, if the board deems it to the best interest of the school district, for the purposes of transporting pupils as required or authorized by any of the provisions of this act or of any other act of the Assembly, appropriate funds for urban common carrier mass transportation purposes from current revenues to urban common carrier mass transportation authorities to assist the authorities to meet costs of operation, maintenance, capital improvements, and debt service. Said contributions shall not be subject to reimbursement by the Commonwealth of Pennsylvania.

(3) The State Board of Education shall adopt regulations, including qualifications of school bus drivers, to govern the transportation of school pupils.

24 P.S. § 13-1361.

Section 1362 of the School Code provides, in pertinent part:

The free transportation of pupils, as required or authorized by this act, or any other act, may be furnished by using either school conveyances, private conveyances, or electric railways, or other common carriers, when the total distance which any pupil must travel by the public highway to or from school, in addition to such transportation, does not exceed one and one-half (1½) miles, and when stations or other proper shelters are provided for the use of such pupils where needed, and when the highway, road, or traffic conditions are not such that walking constitutes a hazard to the safety of the child, as so certified by the Department of Transportation. The Department of Transportation shall take into account the presence of sidewalks along the highway, but such presence or lack thereof shall not be controlling and the department shall consider all relevant safety factors in making its determination as to whether or not walking constitutes a hazard to pupils. All private motor vehicles employed in transporting pupils for hire shall be adequately covered by public liability insurance in such amount as the board of school directors shall require.

24 P.S. § 13-1362.

Section 2509.3 of the School Code provides, in pertinent part:

Each school district, regardless of classification, shall be paid by the Commonwealth the sum of thirty-five dollars ($35) for each nonpublic school pupil transported in the school year 1978-1979 through the school year 1983-1984 . . . . For the school year 2001-2002 and each school year thereafter, each school district shall be paid the sum of three hundred eighty-five dollars ($385) for each nonpublic school pupil transported.

24 P.S. § 25-2509.3, added by the Act of July 13, 1979, P.L. 94.

### III. Discussion

Charter Schools assert that public transportation is less safe than school buses. They argue that some elementary students have to walk as far as two miles

6

to get to a public bus stop and that some even have to transfer buses. They insist that the trial court's decision treats charter school students as second-class citizens in violation of the requirement that they are equal to School District students.

The original Section 1726 of the Charter School Law provided that charter school students "shall be provided transportation to the charter school on the same terms and conditions as transportation is provided to [district] students." *Former* 24 P.S. § 17-1726. That provision was amended several times in succeeding years. The amendments have left school district and charter school students on parallel footing only in Philadelphia, the state's only first-class district, under the current Section 1726-A(a.1), 24 P.S. § 17-1726-A(a.1). Charter Schools posit that this downgrading of the status of charter school students was unwitting on the part of the legislature and that there is no indication that the legislature meant to reduce the rights of charter students as compared to those of school district students.

Charter Schools cite *Mosaica Academy Charter v. Department of Education*, 813 A.2d 813 (Pa. 2002), which concerned Philadelphia and was decided under the then-current version of Section 1726-A, which referenced Section 1361. In *Mosaica*, our Supreme Court concluded that although charter schools were public schools for most purposes, charter schools should receive the benefits afforded to nonpublic schools with regard to transportation. Accordingly, in *Mosaica*, the Philadelphia School District was required to provide transportation of Philadelphia resident students to a charter school outside the district's geographical boundaries.[3]

---

[3] Charter Schools also cite *Springfield School District v. Department of Education*, 397 A.2d 1154 (Pa. 1979), and *Rhoades v. School District of Abington Township*, 226 A.2d 53 (Pa. 1967), two pre-Charter School Law cases in which our Supreme Court emphasized that districts must provide safe transportation, specifically school buses, even to nonpublic students in their catchments. *Springfield*, 397 A.2d at 562-63; *Rhoades*, 226 A.2d at 67. Current Section 1726-A of the Charter School Law provides that "if the school district provides transportation to the public

In 2006, amendments to Section 1726-A of the Charter School Law added consideration of walking distances by providing that transportation is not required for elementary students living within one and one-half miles of the closest public highway to the charter school, unless the road or traffic conditions are such that walking constitutes a safety hazard to students. 24 P.S. § 17-1726-A. However, if the school district provides transportation to its public schools for elementary students "residing within one and one-half [] miles or for secondary students residing within two [] miles of the nearest public highway under nonhazardous conditions, transportation shall also be provided to charter schools under the same conditions." *Id.* Charter Schools contend that the trial court erred in finding the "under the same conditions" language refers only to circumstances in which road conditions make walking unsafe for students, because Section 1726-A already speaks of hazardous conditions in preceding phrases. According to Charter Schools, "under the same conditions" means that if public schools bus district students when road conditions are unsafe for walking, then they must also bus charter students when road conditions are unsafe.[4] Otherwise the "under the same conditions" language in Section 1726-A would be mere surplusage.

Charter Schools observe that in *Watts v. Manheim Township School District*, 121 A.3d 964 (Pa. 2015), our Supreme Court held that no student of any

---

schools of the school district for elementary students, including kindergarten students, residing within one and one-half [] miles or for secondary students residing within two [] miles of the nearest public highway under nonhazardous conditions, transportation shall also be provided to charter schools under the same conditions." 24 P.S. § 17-1726-A.

[4] We note, however, our Supreme Court's acknowledgment of the trial court's finding that, in the absence of contrary evidence, there were no hazardous road or traffic conditions posing a threat to children walking between public bus stops and Charter Schools' facilities. *Bell v. Wilkinsburg Sch. Dist.*, 283 A.3d 245, 249 n.7 (Pa. 2022).

age should have to walk farther than one and one-half miles to a bus stop or to school. *Id.* at 973 n.14. Further, Charter Schools posit that the roads on the students' walking routes must be certified by the Pennsylvania Department of Transportation (DOT) as not hazardous for children walking to school. *Id.* at 970 n.7 (citing Section 1362 of the School Code). According to Charter Schools, the School District here presented no evidence that DOT was asked to conduct safety inspections of any routes charter students would have to walk to public transit bus stops; and because the School District did not ask, DOT never had the opportunity to certify whether hazardous conditions exist on the routes to public bus stops. In any event, Charter Schools insist they presented ample evidence that the routes are unsafe and/or too long (over 1.5 miles) for students.

Charter Schools suggest the School District is cavalier in asserting that the need for grade school students to transfer buses, take long rides, or suffer other unpleasant conditions to get to and from school is irrelevant so long as the students are offered free transportation and do not have to walk over one and one-half miles. Charter Schools seek to distinguish *Chipman v. Avon Grove School District*, 841 A.2d 1098 (Pa. Cmwlth. 2004), on which the School District relies. Charter Schools assert that the issue in *Chipman* was whether ride length and transfers alone were enough to show a violation of Section 1361 of the School Code. In that case, however, the student was still on a school bus, but here, there are safety concerns associated with public transportation.[5]

---

[5] Charter Schools also raise a constitutional issue, suggesting that refusal to transport charter students on school buses violates their fundamental right to a public education. However, as Charter Schools acknowledge, they did not raise this issue previously. Charter Schools' Reply Br. at 4. The most that Charter Schools can point to is that they cited in the trial court the presumption that the legislature does not intend to violate the Constitution. They cite no authority to support an inference that this is sufficient to raise a constitutional challenge. Accordingly, they

9

Charter Schools also insist they established at trial that some students must walk over one and one-half miles, some elementary-age children must take three buses to stay under that maximum walking distance, and other children must leave so early that it is still dark outside. Charter Schools argue this is both unpleasant and inequitable.

The School District responds that Section 1362 of the School Code expressly permits districts to provide students with free transportation on public transit. The School District asserts that the trial court was correct in holding that "under the same conditions" in Section 1726-A means that transit routes must be nonhazardous, not that charter school students and district students must be transported by the same mode. The District maintains that its provision of public bus passes to charter school students fulfills its obligation under Section 1726-A of the Charter School Law. The School District acknowledges that for students in kindergarten through fifth grade, public bus transit may be less desirable, but the School District insists public transit has never been found unsafe. *See Bell*, 283 A.3d at 249 n.7 (noting trial court's finding of "no highway, road, or traffic conditions that constituted a hazard to the safety of any child who was walking between a [public] bus stop and a charter school"). The School District also cites as support the observation of our Supreme Court, in its remand opinion, quoted below, that safety issues in transporting students by school bus versus common carrier are matters of public policy which are under the rubric of the legislature, not the courts. *See Bell*, 283 A.3d at 257 n.15.

have not preserved a constitutional challenge for appeal, and we will not consider it. Pa. R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

The public bus passes are limited to students residing in the School District who attend charter schools located outside of the School District. As our Supreme Court observed, no evidence at trial showed that any grade school student had to walk more than one and one-half miles to reach a public bus stop or that the routes to do so were unsafe. *See Bell*, 283 A.3d at 249 n.7. Therefore, we agree with the School District that its transportation policy does not violate Section 1362 of the School Code, which requires less than one and one-half miles of walking distance, stations or shelters where needed, and no DOT certification of hazardous conditions. The School District cites *Hoffman v. Steel Valley School District*, 107 A.3d 288 (Pa. Cmwlth. 2015), in which this Court concluded that a school district was not required to provide private transportation to charter school students and that it was not unreasonable for the school district to provide reimbursement for either public transit or mileage for parents to drive their children to charter schools.

The School District concedes that in the past, it had to provide the same mode of transportation for charter school and district students; however, amendments have removed that requirement in favor of the current more flexible approach. We are forced to agree. Despite the concerns of Charter Schools and the students' parents, the ages of students, their need to transfer buses, or the lengths of their bus rides are not legal factors in determining compliance with Sections 1726-A and 1362. The plain language of Section 1726-A of the Charter School Law, as currently worded, requires only free transportation for all students. The School District, in its discretion, may provide any of the four modes of transportation listed in Section 1362; Section 1726-A does not require identical transportation for school district students and charter school students. Essentially, Charter Schools ask this Court to rewrite Section 1726-A, using the current "under the same conditions"

11

language, to restore what the legislature took out through its amendments, *i.e.*, any former implication that charter and district students must be provided the same modes of transportation due to the language in former Section 1726 that transportation must be provided "on the same terms and conditions." *Former* 24 P.S. § 17-1726.

*Rhoades*, on which Charter Schools rely, stated that students are safer on school buses than in cars. 226 A.2d at 57. However, as the School District correctly observes, our Supreme Court's opinion in *Rhoades* did not discuss the relative safety of school buses and public buses, much less require school buses rather than public buses. *See id.* Therefore, we agree with the School District that *Rhoades* is not determinative here. Similarly, Section 1361 applies only to nonpublic school students, who must receive "identical provision" of transportation to public students. 24 P.S. § 13-1361. Because charter schools are public schools, not nonpublic schools, Section 1361 does not apply here.

*Mosaica*, on which Charter Schools also rely, dealt with a prior version of Section 1726-A, which referenced Section 1361 of the School Code; the current version does not. Because Section 1361 requires "identical provision" of travel to nonpublic and public students, *Mosaica* was correct for its time. But since Section 1726-A was amended in 2006 to omit its reference to Section 1361, Charter Schools cannot rely on either Section 1726-A or *Mosaica* to demand school bus service, as neither the current Section 1726-A nor Section 1362 requires it.

Similarly, although the version of Section 1726-A at issue in *Mosaica* included the original language required "transportation on the same terms and conditions," that language was removed in 2002. *Compare former* 24 P.S. § 17-1726 *with* 24 P.S. § 17-1726-A. In 2006, the legislature amended Section 1726-A.

12

Had the legislature wished at that time to restore the "same terms and conditions" language, it could have done so, but it did not. Instead, the legislature added only "under the same conditions," and it did so in a sentence that specifically pertains to road conditions rather than the overall provision of travel. 24 P.S. § 17-1726-A. The trial court correctly concluded that Charter Schools' reading of Section 1726-A would rewrite it to reinsert language that the legislature specifically removed and chose not to restore.

As noted above, DOT has not certified any hazardous walking routes within the area at issue here, and Charter Schools failed to provide evidence sufficient to persuade the trial court otherwise. Therefore, the School District's transportation policy does not violate Section 1362 of the School Code. Also, requiring some students to transfer buses is not prohibited by the School Code or Charter School Law, so long as the students do not have to walk more than one and one-half miles. The quality or pleasantness of any individual student's transportation experience cannot be the basis for a contrary conclusion. *See Chipman*, 841 A.2d at 1104 (concluding that a private school student who had to transfer and take a longer ride in a school bus did not show a violation of Section 1361's "identical provision" language "[i]n the absence of probable proof of safety problems . . .").

In its decision reversing and remanding, our Supreme Court observed:

> We do not minimize the important concerns [Charter Schools and their] *amici* highlight, in support of their statutory argument, regarding the perceived safety advantages of transporting students by school bus over a common carrier.[6] However, these are matters which, at

_____

[6] An *amicus* brief before our Supreme Court (a group of charter schools not involved here) described qualitative advantages of school buses and public buses, including their bright color and

13

their core, involve policy judgments, and, as such, were presumably carefully considered by the General Assembly when it permitted student transportation by common carrier under Section []1362 of the Public School Code, while imposing explicit student safety requirements which a school district must meet in order to use such a mode of transportation . . . . It is not this Court's role to supplant those policy determinations.

*Bell*, 283 A.3d at 257 n.15. We, too, acknowledge the serious safety hazards that may arise from sending children of tender years on public transportation unaccompanied. However, we must presume that the legislature considered the potential safety consequences when it amended the Charter School Law to remove, except in Philadelphia, the requirement of former Section 1726 to transport charter school students "on the same terms and conditions as . . . [district] students." *Former* 24 P.S. § 17-1726.

In short, the trial court construed the plain language of the School Code and the Charter School Law correctly. Notwithstanding Charter Schools' assertions concerning the legislature's intent, the statutory language is clear on its face, and we, like the trial court, are bound to uphold it as drafted. Although we share Charter Schools' safety concerns, only the legislature can make the policy choice advocated by Charter Schools here.

---

ability to stop and put out the stop sign arm on the side of the bus, as well as heightened background checks applicable to school bus drivers.

## IV. Conclusion

Based on the foregoing discussion, we are constrained to affirm the trial court's order.

_____
CHRISTINE FIZZANO CANNON, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Betty Bell, an adult individual, and :
Propel Schools, d/b/a Propel Charter :
School – Homestead, Propel Charter :
School – Sunrise, d/b/a Propel :
Braddock Hills, Propel Charter School – :
Pitcairn, and Propel Charter School – :
Hazelwood, :
                    Appellants :
                      :
         v. :
                     :   No. 1259 C.D. 2019
Wilkinsburg School District :

## O R D E R


AND NOW, this 31st day of  January 2024, the August 23, 2019 order of the Court of Common Pleas of Allegheny County is AFFIRMED.


_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Betty Bell, an adult individual, and Propel   :
Schools, d/b/a Propel Charter School -     :
Homestead, Propel Charter School -      :
Sunrise, d/b/a Propel Braddock Hills,     :
Propel Charter School - Pitcairn, and     :
Propel Charter School - Hazelwood,      :
               Appellants       :
                              :
           v.              :     No. 1259 C.D. 2019
                              :     Argued: October 11, 2023
Wilkinsburg School District         :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge

***OPINION NOT REPORTED***

DISSENTING OPINION
BY JUDGE McCULLOUGH             FILED: January 31, 2024


       I join the dissent of Judge Wallace. I write separately to emphasize that, as a matter of practice, the General Assembly does not intend a result that is "absurd, impossible of execution or unreasonable." 1 Pa. C.S. § 1922(1). Putting aside all other issues of statutory interpretation, making a five-year old take two Port Authority Transit buses to get to school, ride with complete strangers, transferring once or twice, increasing the length of her commute, and then making the child do the same thing on the way home, is at best unreasonable, and at worst absurd.

School transportation is undoubtedly an overarching part of our government's commitment to educating school children safely. Hence, I cannot fathom that the General Assembly is more concerned with the safe education of one pupil than another.

Therefore, I dissent.

 

 

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Betty Bell, an adult individual, and          :
Propel Schools, d/b/a Propel Charter         :
School - Homestead, Propel Charter           :
School - Sunrise, d/b/a Propel Braddock      :
Hills, Propel Charter School - Pitcairn,     :
and Propel Charter School - Hazelwood,       :
                    Appellants  :
                                   :
         v.                           :  No.  1259 C.D. 2019
                                   :  Argued:  October 11, 2023
Wilkinsburg School District                  :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE WALLACE                                    FILED:  January 31, 2024


      I respectfully dissent.  When our General Assembly passed Section 1726-A of the Charter School Law[1] in 1997, its intent was to provide charter school students with the same transportation options as their peers attending traditional public

_____

[1] The Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, added by Section 1 of the Act of June 19, 1997, P.L. 225, 24 P.S. 17-1726-A.  Article XVII-A of the 1997 Act added the Charter School Law to the School Code.

schools. As originally drafted, Section 1726-A said this explicitly. It directed that charter school students who reside in the school district where their charter school is located "shall be provided transportation to the charter school on the same terms and conditions as transportation is provided to students attending the schools of the district." Act of June 19, 1997, P.L. 225. Section 1726-A directed that students who do not reside in the school district "shall be provided transportation under" Section 1361 of the School Code, 24 P.S. § 13-1361.[2] *Id.*

In 2002, our Supreme Court considered this prior version of Section 1726-A and concluded the Philadelphia School District was required to transport students to a charter school outside its boundaries. *Mosaica Acad. Charter Sch. v. Dep't of Educ.*, 813 A.2d 813, 820-22 (Pa. 2002). The Supreme Court observed that, although charter schools were public schools by definition, the General Assembly "went to great lengths to treat the charter schools akin to private schools for purposes of transportation." *Id.* at 822 (emphasis omitted). The Court focused on Section 1726-A's requirement that students who do not reside in the school district must receive transportation under Section 1361. *Id.* The Court cited other factors as well, including the statutory definition of "charter school" as "an independent public school"[3] and the fact that school districts transporting charter school students could

---

[2] Section 1361(1) permits a school district to provide "any resident pupil" with free transportation to schools located within the district or outside its boundaries "at a distance not exceeding ten miles by the nearest public highway." 24 P.S. § 13-1361(1). If a school district provides free transportation to public school students, it must "make identical provision for the free transportation" of students attending nonpublic schools "during regular school hours on such dates and periods that the nonpublic school . . . is in regular session." *Id.*

[3] *See* Section 1703-A of the Charter School Law, 24 P.S. § 17-1703-A.

receive payments under a provision that applied specifically to nonpublic school students.[4] *Id.*

Shortly before our Supreme Court decided *Mosaica*, the General Assembly passed an amendment to Section 1726-A. *See* Act of December 9, 2002, P.L. 1472, No. 187 (Act 187). The amendment removed the "same terms and conditions" language as well as the reference to Section 1361. In its place, the amendment added specific protections for students attending charter schools, similar to the ones enjoyed by nonpublic school students under Section 1361(1). The General Assembly directed, in relevant part, that school districts must provide free transportation for students attending charter schools up to 10 miles outside of the district boundaries "on such dates and periods that the charter school is in regular session." *Id.* In Section 14 of Act 187, the General Assembly explained the purpose of its amendment was "to clarify the current provisions . . . regarding the transportation" of charter school students. *Id.*

The Majority now concludes that our General Assembly does not intend to provide charter school students with the same transportation options as their peers attending traditional public schools, primarily because of the language eliminated in Act 187. In other words, the Majority concludes that our General Assembly did not merely "clarify" Section 1726-A, as it said it did, but reversed course completely, stripping charter school students of the equal transportation options they once enjoyed. I cannot accept the Majority's conclusion.

Preliminarily, I believe our General Assembly eliminated the "same terms and conditions" language from Section 1726-A because it was ambiguous, not because of a desire to deny charter school students equal transportation options. Under

_____

[4] *See* Section 2509.3 of the School Code, added by Section 8 of the Act of July 13, 1979, P.L. 94, 24 P.S. § 25-2509.3.

Section 1361(1), a school district "may" provide free transportation for public school students, although it is not required. 24 P.S. § 13-1361(1). Section 1726-A's original language, that school districts "shall" provide transportation to charter school students "on the same terms and conditions as transportation is provided to students attending the schools of the district" was capable of multiple interpretations if students attending the schools of the district did not receive transportation. *See* Act of June 19, 1997, P.L. 225. The inclusion of the word "shall" could mean charter school students were entitled to transportation even when traditional public school students were not. Meanwhile, providing transportation on "the same terms and conditions" could mean charter school students were not entitled to transportation unless the school district was also transporting its traditional public school students. Section 1726-A(a)'s current language resolves this ambiguity by directing simply that charter school students "shall be provided free transportation."[5] 24 P.S. § 17-1726-A(a).

Although our General Assembly removed any direct reference to Section 1361 from Section 1726-A, the two provisions remain *in pari materia*, and we must read them together. *See T.G.A. v. Dep't of Educ.*, 302 A.3d 830, 845 (Pa. Cmwlth. 2023) (*en banc*) (quoting 1 Pa.C.S. § 1932). Moreover, the other factors the Supreme Court considered when concluding charter schools were "akin to private schools for purposes of transportation," remain in place. *Mosaica*, 813 A.2d at 822. A charter school is still defined as an "independent public school," distinct from traditional

---

[5] It makes sense that charter school students must always receive free transportation under Section 1726-A because a school might be chartered by multiple school districts and enroll students from a broad geographic region. *See* Section 1718-A of the Charter School Law, 24 P.S. § 17-1718-A. The distance from a student's residence to his or her charter school may be greater than it would be to a traditional public school or local nonpublic school.

public schools, and school districts still receive payments for transporting charter school students under a provision pertaining to nonpublic school students. *Id.*

The Majority's alternative conclusion invites a host of constitutional concerns because it may result in similarly-situated public school students receiving unequal treatment or in public school students receiving demonstrably worse treatment than students attending religious schools.[6] *See, e.g., William Penn Sch. Dist. v. Pa. Dep't of Educ.*, 294 A.3d 537, 946-57 (Pa. Cmwlth. 2023) (Cohn Jubelirer, P.J., single-judge op.) (recognizing public education as a fundamental right and applying strict scrutiny review in the context of an equal protection challenge); *Springfield Sch. Dist., Delaware Cnty. v. Dep't of Educ.*, 397 A.2d 1154, 1160-66 (Pa. 1979) (concluding Section 1361 did not violate the Establishment Clause, U.S. Const. amend. I, because, among other things, it did not have a primary effect of either advancing or inhibiting religion). Where, as here, we may interpret a statute in multiple ways, it is our duty to avoid an interpretation raising "grave and doubtful constitutional questions." *Commonwealth v. McClelland*, 233 A.3d 717, 735 (Pa. 2020) (quoting *Commonwealth v. Veon*, 150 A.3d 435, 443 (Pa. 2016)).

For these reasons, I would construe Sections 1361(1) and 1726-A together and conclude a school district may not provide a transportation option, such as use of a

---

[6] The possibility of unequal treatment is particularly pronounced in Philadelphia. The Majority cites Section 1726-A(a.1) to suggest that charter schools students have equal transportation options "only in Philadelphia." *Bell v. Wilkinsburg Sch. Dist.* (Pa. Cmwlth., No. 1259 C.D. 2019, filed January 31, 2024), Maj. Op. at 7. However, Section 1726-A(a.1) places limitations on the transportation required for Philadelphia charter school students. Although charter school students must receive transportation as a general rule, charter school students in Philadelphia must receive transportation only "if they are the same age or are enrolled in the same grade, grades or their grade equivalents as any of the students of the school district for whom transportation is provided under any program or policy to the schools of the school district." 24 P.S. § 17-1726-A(a.1).

school bus, to traditional public school students while denying that option to charter school students. I would, therefore, reverse the entry of judgment in favor of Wilkinsburg School District.

_____
STACY WALLACE, Judge

Judge McCullough joins in this Dissenting Opinion.